GARY A. MANNING *et al.*, Plaintiffs-Appellees, *v.* THE REGIONAL BOARD OF SCHOOL TRUSTEES OF OGLE COUNTY *et al.*, Defendants.—(THE BOARD OF EDUCATION OF OREGON COMMUNITY UNIT SCHOOL DISTRICT NO. 220, Defendant-Appellant.)

Second District    No. 80-313

Opinion filed January 27, 1981.

Ole Pace and Robert E. Branson, both of Ward, Ward, Murray, Pace & Johnson, of Sterling, for appellant.

Charles E. Cronauer and James Donnelly, both of O'Malley, Cronauer & Donnelly, of De Kalb, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The Regional Board of School Trustees of Ogle County appeals from the judgment of the circuit court of Ogle County reversing the decision of the Regional Board of School Trustees of Ogle County (hereafter "Board") which denied the plaintiffs' petition for detachment.

The plaintiffs are individuals whose children had formerly attended Chana Elementary School located in Oregon Community Unit School District No. 220. Upon learning that the Chana school was to be abandoned and that their children would be assigned to the Oregon Community School District, the plaintiffs petitioned to have the area comprising their homes, which is about 500 acres in extent, detached from the Oregon Community Unit School District No. 220 and annexed to the Rochelle Township High School District No. 212 and the Kings Consolidated School District No. 144. After a hearing, the Board denied the petition on the ground that the change would not be in the best interests of the schools in the area and would not promote the educational welfare of the pupils therein.

Sections 7—1, 7—4, 7—6 and 7—7 of the School Code (Ill. Rev. Stat. 1979, ch. 122, pars. 7—1, 7—4, 7—6 and 7—7) provide for the detachment from existing school districts and annexation to another district within a county upon petition signed by two-thirds of the legal voters "residing in any territory proposed to be detached from one or more districts or in each of one or more districts proposed to be annexed to or consolidated with another district." (Ill. Rev. Stat. 1979, ch. 122, par. 7—1.) The testimony of several of the petitioners was to the effect that they were employed in or near the Rochelle area, that it was more convenient for them if their children attended Kings Consolidated School, that the distance from their homes to Kings Consolidated School or Rochelle Township High School was shorter than that from their homes to the Oregon Community Unit School and that it would be easier both for themselves and their children to participate in activities outside of normal school hours if their children attended school in the Rochelle area where they could more easily be picked up by the parents after school activities. They testified that their shopping and social activities were oriented

toward the Rochelle district and thus the children's after-school activities merged into the parents' activities more easily in the Rochelle area. There was some conflict in the testimony as to respective distances from the plaintiffs' area to the Rochelle and to the Oregon schools; however, the maximum distance claimed by the petitioners for Oregon schools was 12 miles as opposed to 9 or 10 miles to the Rochelle High School and perhaps a mile or two farther to Kings School. It was thus not a significant difference as far as mileage was concerned.

The financial detriment to the Oregon Community Unit School District No. 220 by the detachment would be, according to the testimony, approximately $10,000 per year, including State aid. There was testimony that the Oregon Community Unit School District No. 220 had approximately $38,000,000 in assessed valuation and the value of the detached land was approximately $158,000, making the financial impact to Oregon by the detachment insignificant. The superintendent of Kings Elementary School and the superintendent of Rochelle Township High School both testified that the new students coming into their district by reason of the detachment would not have a significant effect on the pupil-teacher ratio. The curriculum in both school districts was conceded to be adequate, and no new teachers would be required for Rochelle Township High School or Kings Elementary School by reason of the transfer.

In this appeal from the decision of the circuit court granting the detachment petition, the Board contends (1) its decision denying the petition should be sustained because the petitioners did not prove the elements required for detachment from one school district and annexation to another and (2) that the trial court erred in holding that the Board's decision was against the manifest weight of the evidence.

The Board says the petition was defective because the petitioners failed to prove it was signed by two-thirds of the legal voters residing in the territory. However, while the petitioners may not have proved they represented two-thirds or more of the legal voters living in the proposed area of detachment, the Board is not in a position to challenge that requirement since it never raised the question at the hearing and its order denying the petition recited in its jurisdictional finding the following: "* * * and it appearing that said petition is in all respects in compliance with the Law as to form and content and signature thereon * * *." The personnel of the Board were familiar with the region and the petitioners and did not challenge the petition on the ground that there were not sufficient signatures thereon. This contention, raised here for the first time, is purely negative—there is no evidence that the signatures did not represent two-thirds of the legal voters residing in the area in question, and the Board having found that the petition was proper as to signatures and no evidence having been adduced to the contrary, we think the

contention of the Board as to lack of proof on this point must be disregarded. The case of *People ex rel. Anderson v. Community Unit School District No. 201* (1955), 7 Ill. App. 2d 32, is cited in support of this contention by the Board, but we find that case to be entirely inapposite to the one before us. In the cited case a writ of quo warranto was brought by the State's Attorney on the relation of certain citizens, to question the jurisdiction of the school board over certain territory. It was clearly shown that the school board had not acted in accordance with the applicable statute in holding an election and it was therefore not exercising lawful jurisdiction over the territory. We see no parallel in that case to this one. The Board itself found the signatures on the petition proper at the hearing, and there is no evidence that the petition was actually deficient as to signatures.

We do not agree that the trial court's decision was against the manifest weight of the evidence. The testimony of the school officials of both districts indicated no serious impact financially on either district by reason of the detachment. What evidence there was on the question of pupil benefit or loss was presented by the petitioners, and it indicated that there would be a direct gain to the pupils in the way of increased opportunity for participation in after-school activities as well as an indirect gain through greater participation by their parents in such activities if the children attended school in the Kings-Rochelle district. Thus there was evidence from which the court could reasonably conclude that there was some potential advantage to both the pupils and their parents in the proposed detachment from the Oregon district.

The Board cites the case of *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, as indicating that a decision to detach or not to detach a territory from an existing district is governed by the considerations set out in the statute—now section 7—2.6 of the School Code, that is "the division of funds and assets which will result from any change of boundaries" and "whether it is in the best interests of the schools of the area and the educational welfare of the pupils" to grant the change in boundaries. (Ill. Rev. Stat. 1979, ch. 24, par. 7—2.6.) These criteria rather than the personal preference of the petitioners, the Board contends, are the controlling considerations as to whether or not to grant a petition for detachment from one school district and annexation to another. However, even if we accept this interpretation of the *Oakdale* case, we see no necessary conflict between that case and the trial court's decision here. Had there been evidence presented to the Board clearly indicating either that the proposed detachment would cause a significant financial impact on the detaching district or that the educational welfare of the detaching pupils would be adversely affected, the *Oakdale* decision would be very signif-

icant in guiding our opinion here. However, we find from the testimony—as the trial court did—that these considerations are not a vital concern because the change from one district to the other will not significantly affect either district since the financial impact of the change will be relatively slight and the two school districts provide the same quality of education. However, as to the educational benefit to the pupils that may be derived from greater association with the school community—most directly by the students and indirectly through their parents—the testimony clearly shows that an advantage will be derived from the proposed change. Such evidence as there is, therefore, satisfies the statute as to the educational welfare of the pupils. With little financial impact to be feared to the detaching school district and some gain in the educational welfare of the pupils indicated by the testimony, we think the trial court's decision did not by any means go counter to the *Oakdale* case. In that case, the supreme court found that the statutory standards were not satisfied, in that the change would cause a depletion in the resources of the detaching district and would result in an overcrowded condition in the district to which the pupils would be transferred, thus creating a disadvantage to the students educationally. (12 Ill. 2d 190, 194.) The testimony before the Board in this case did not support such a conclusion.

The Board contends that "where the evidence is conflicting a sound policy should require that the decision of the Board be sustained;" however in this case we do not find a conflict in the evidence itself. What positive evidence there was seems, in our view, to favor the detachment. We find the case analogous to *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, where, also, the educational facilities in the two districts were essentially equal. The court in that case said, after considering the factor of distance and finding it slightly in favor of the detachment:

> "But even as much or more than these considerations, is the fact that an identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer educational picture. In recognition of these facts the legislature made provision for proceedings to change the boundaries of existing districts." (25 Ill. App. 2d 503, 509-10.)

To the same effect is *Newman v. County Board of School Trustees* (1974), 19 Ill. App. 3d 584, and *Board of Education v. Regional Board of*

*School Trustees* (1980), 86 Ill. App. 3d 230, where the court affirmed the decision of the board allowing a detachment for reasons similar to those presented here. This court in *Board of Education v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, recently upheld a detachment petition involving only one student where it appeared that there was no significant financial impact involved and the opportunities of the student in the district petitioned for were superior to those of the original school. Again, we emphasize, in that case there was more involved than the mere personal preference of the parents.

The Board raises a further objection that the proposed change would result in an irregularly shaped district and that portions of the Oregon district would no longer be compact and contiguous. A glance at the Ogle County School District map discloses that neither of the districts involved is either compact nor regular in its boundaries at the present time. Any further irregularity in boundaries does not seem to be a serious matter. The change would not, of course, render the annexing territory noncontiguous, and in view of the already existing irregularities we do not consider the proposed alteration of the shape of the districts resulting from the detachment to be a significant factor. We think there is more than the mere personal preferences of the parents involved in this case. There was evidence of a positive advantage educationally for both students and parents resulting from the proposed change in school communities. Having reviewed the record in light of the applicable tests, we find the trial court was correct in finding the Board's order to be against the manifest weight of the evidence. On this basis we affirm the judgment of the circuit court of Ogle County granting the petition for detachment.

Judgment affirmed.

SEIDENFELD, P. J., and NASH, J., concur.