DONALD FRANCOIS *et al.*, Plaintiffs-Appellees, *v.* REGIONAL BOARD OF SCHOOL TRUSTEES OF GRUNDY AND KENDALL COUNTIES *et al.*, Defendants-Appellants.

Third District    No. 80-467

Opinion filed June 17, 1981.

STOUDER, J., dissenting.

Stuart L. Whitt, of Matthews, Dean, Eichmeier, Simantz & Hem, P. C., of Aurora, for appellants.

Frank J. Black, of Black & Black, of Morris, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant School Boards appeal from the decision and judgment of the Circuit Court of Grundy County in this administrative review proceeding. Plaintiffs had filed a petition to detach certain territory from

Braceville Elementary School District No. 75 and from Gardner South Wilmington High School District No. 73 and to annex the property to Coal City Community Unit School District No. 1. The petition to detach and annex was filed, as required by section 7—6 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 7—6), with the Regional Board of School Trustees of Grundy and Kendall Counties. A hearing on the petition was held by the Regional Board, and the petition was denied.

Plaintiffs Donald and Diane Francois thereafter filed a complaint for administrative review in the circuit court. (Ill. Rev. Stat. 1979, ch. 110, par. 267.) The circuit court thereafter reversed the decision of the Regional Board, finding that the Board's decision was contrary to the manifest weight of the evidence and that the best interests of the schools of the area and the educational welfare of the pupils would be served by the granting of the petition. The court found that the granting of the petition would not affect the districts' ability to meet the standards of recognition and that any change in the division of funds and assets among the affected districts was not significant and would not jeopardize the educational resources of the districts. From that decision, the school districts now appeal.

The school districts argue that (1) the decision of the Regional Board was supported by the evidence in the record and that the circuit court erred in finding that decision to be contrary to the manifest weight of the evidence; (2) that the court erred in concluding that detachment and annexation would be in the best interests of the schools and the educational welfare of the pupils.

The facts are not seriously in dispute and were presented at the hearing before the Regional Board. The plaintiffs Francois are buying 380 acres of farmland on a contract from the Dondanvilles. The acreage is contiguous, but 120 acres lies in the Braceville and Gardner South Wilmington School Districts and the other 260 acres in the Coal City District. Only 20 acres of the 120 acres in Braceville and Gardner South Wilmington Districts is the subject of the proposed detachment and annexation in this case. The family residence is within a quarter mile of the boundary line between the districts, and the annexation sought is of 20 acres which includes the residence property. The Francois family is the only family living on the 20 acres and they have lived there for 15 years. Beginning in the 1978-1979 school year the two Francois children, Daron and Darcy, began attending elementary school in the Coal City District. In 1979, the Francoises established residence for the children with their grandmother, Naomi Francois, in Coal City. While residence was established there, the children spend every weekend, every afternoon and many nights in the home of their parents.

The testimony supporting the petition to detach and annex the 20

acres centered upon the parents' conclusions as to the best interests of their children. Daron, the eldest, had attended Braceville from kindergarten through the fourth grade. In all those years, except the fourth grade year, Daron's performance was very satisfactory. However, his performance slipped markedly during the fourth grade. The following year, Daron transferred to Coal City schools, where he repeated the fourth grade, with very satisfactory results. The Francoises testified that Daron performed much better and was more interested and happier in the Coal City school. They felt that one of the reasons for the improvement at school was that Daron's friends also attended the Coal City school. The younger child, Darcy, had attended kindergarten in Braceville and first grade in Coal City and no comparison was reasonably to be made from the differences.

The Francoises further testified that their social and business connections are with Coal City, and not with Braceville and Gardner South Wilmington. Similar connections of the children to Coal City were also brought forth. The children belong to a 4—H Club which is headquartered in Coal City. They have friends there in Coal City as well as around their farm in Braceville Township. Mr. Francois testified further that he thought it important that his son, who wishes to be a farmer, attend the Grundy Area Vocational Center (GAVC), a vocational co-operative which provides for training in agriculture. The Coal City District is a member of GAVC, while the Gardner South Wilmington District is not. Daron would not be able to attend the GAVC programs for another five years, since the program is for high school students. Gardner South Wilmington District has sought membership in the vocational system, recognizing the broad range of courses offered, but district voters have turned down such membership twice in recent years.

Other evidence indicated that the Coal City District has 1601 students attending the grade and high schools and that 494 students attend the grade and high schools in the Braceville and Gardner South Wilmington Districts. Coal City did not oppose the annexation. Coal City is a larger school and has departmentalized courses and a broader selection of courses.

The Superintendents of the districts from which detachment was sought testified in opposition to the detachment. Robert Howard, of the Gardner South Wilmington School District, testified that the effect of the detachment would be to reduce the district's assessed valuation by $26,000. That would be a loss of tax revenue totaling $461 per year to the high school. Mr. Howard also testified as to the comparable education provided by Gardner South Wilmington High School when compared with Coal City High School. Mr. Howard testified that the district does provide vocational courses, and while no specific agricultural courses are

offered, the Industrial Education courses which are offered are similar. He also testified that it is possible that the district would become a member of GAVC in the following five years. Howard testified that Gardner South Wilmington was not at full capacity nor was expected to be so for the next several years. He stated that there was overcrowding in the grade schools of the Coal City District. Howard also testified that the Francoises did not attend meetings with respect to the referendum to become members of the GAVC, nor did they contact him to express their views on such membership.

Bill Phillips, of the Braceville Grade School District, testified that his school was one of the poorest in the State. The evidence indicated that the district would lose $439 in tax revenue should the Francoises' 20 acres be detached. Phillips testified that Braceville Grade School District offers a good program in basic elementary education. He also testified that the Francois property at issue has been included in the district for more than 100 years. Phillips, too, testified that there was overcrowding in the Coal City grade schools and that the district there faced a building program in the foreseeable future, with referendum approval necessary. Both superintendents testified that their districts were taxing at their legally allowable rate and that the loss of tax revenues would reduce the revenues available to pay expenses. Braceville has an annual budget of $400,000 while Gardner South Wilmington's budget is $500,000 annually. However, both superintendents admitted that their districts could maintain the same educational program with the detachment and neither indicated that a reduction in the number or quality of its programs would result from the loss of tax revenue, given the detachment.

The Regional Board of School Trustees, having heard the evidence presented, thereafter deliberated the petition and voted to deny the detachment and annexation. An order denying the petition was entered, though no findings of fact were set forth by the Regional Board. Plaintiffs then filed their complaint for administrative review over the decision. The circuit court, reviewing the record, found (1) that the decision of the Regional Board was against the manifest weight of the evidence and erroneous as a matter of law and (2) that it was to the best interests of the schools and the educational welfare of the pupils therein that the petition be granted. On the basis of these findings, the circuit court reversed the decision of the Regional Board and ordered that the territory in question be detached from Braceville and Gardner South Wilmington and annexed to Coal City. From this decision and order, the defendant school districts appeal.

■■ The rules governing review over administrative decisions are well settled. The circuit court, sitting in such review, can reverse an administrative decision only if the decision is contrary to the manifest weight of

the evidence. (*Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 477, 210 N.E.2d 609.) In such review actions, the findings and conclusions of the administrative agency are, by statute, held to be *prima facie* true and correct. (Ill. Rev. Stat. 1979, ch. 110, par. 274.) Of course, as we noted in *Wheeler*, the rule of *prima facie* validity does not relieve the courts from the duty to examine the evidence in an impartial manner to determine whether the conclusion of the agency is supported in the record. (62 Ill. App. 2d 467, 477.) Pertinent parts of section 7—6 set forth the considerations to be addressed in determining a petition to detach and annex:

"The county board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted * * *." Ill. Rev. Stat. 1979, ch. 122, par. 7—6.

In the case at bar the evidence concerning the effects upon the schools and the pupils is clear and largely undisputed. The ability of the districts affected to meet the standards of recognition will not be impaired by the petition for annexation. Nor will there be any change in the attendance figures for any of the schools involved, as the Francois children, who are the only ones affected, are currently attending Coal City schools. The principal detriment to the districts from which detachment is sought would be a loss in assessed valuation with a corresponding loss in tax revenues. The Braceville District would lose $439 in tax revenue, while the Gardner South Wilmington District would lose about $461 in tax revenues. While both districts are currently taxing at the maximum legal rate without referendum, the evidence indicated that the loss of the tax revenues from these 20 acres would not substantially affect the financial stability of the districts nor the quality of their educational programs.

Some change in revenues is inevitable whenever a boundary change occurs, and the legislature, as has been noted, had to have been aware of that when it provided for detachment and annexation. (*Community Consolidated School District No. 201 v. County Board of School Trustees* (1955), 7 Ill. App. 2d 98, 102, 129 N.E.2d 43.) In the instant case there is no indication that the division of funds and assets resulting from the boundary change would in any manner jeopardize the districts from which detachment is sought. (*Wheeler v. County Board of School*

*Trustees* (1965), 62 Ill. App. 2d 467, 476, 210 N.E.2d 609.) The appellant districts point to the testimony of their superintendents that there is overcrowding in the Coal City Schools to support the denial of the petition. Yet, the overcrowding issue is of minimal significance where, as here, the affected children are already attending the Coal City schools and no change in pupil population would result from a decision made either way on the petition. In summary, the sole viable basis in the record for denial of the petition by the Regional Board is the asserted loss of $900 in tax revenues by the Braceville and Gardner South Wilmington School Districts.

Contrasted to this minimal loss of tax revenue by the detached districts is the evidence of benefit to the Francois children. Daron's performance in school and his attitude toward school have improved markedly since his switch to the Coal City Schools. We do not believe that the improvement can be solely ascribed to his repetition of the fourth grade there, although that may well have been one factor. Other advantages were also established. The evidence indicated that the children had greater contacts in Coal City in extracurricular activities, specifically their 4—H group. Testimony by the parents indicated that their own social and business connections were with Coal City and that most of the children's friends attended Coal City schools. Clearly, the evidence established that the Francoises, both the parents and children, had a greater interest in and identity with Coal City and its community than with the school districts and areas from which detachment was sought. Other evidence indicated that the Coal City schools offered particular classes and programs of special interest to one of the Francois children. The GAVC program available in Coal City provided a program in agriculture which Daron Francois hoped to utilize when old enough to do so. That the same program might be available in the future at Gardner South Wilmington is speculative and, therefore, entitled to little weight in assessing benefits and detriments to the children in the area. Nor do we think that the fact that the Francoises did not actively participate in the referendum drive to bring GAVC to Gardner South Wilmington establishes their insincerity in advancing GAVC as a reason for wishing alignment with the Coal City Schools. The reasons advanced by the petitioners for their desire to annex with Coal City were valid and substantial and supported by the evidence. So far as the effect of the change on other students at the schools, there was no indication that the change in boundary would have any substantial effect on them.

We were faced with a similar situation and similar considerations in the *Wheeler* case above cited. There, as here, the educational facilities of the districts involved were essentially equal. There, as here, the record indicated that the loss of revenue would not substantially affect the

operation of the schools in the detached districts. There, as here, the ties of the petitioners and their children were with the annexing district. Concerning the importance of the latter factor, especially where all other factors are equal, we quoted in *Wheeler* from *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 167 N.E.2d 21:

> " 'Parents are definitely interested in schools their children attend. All their ties and interests may be centered in a certain community and their convenience and their personal desires, as well as the personal desires of the landowner, should be given due consideration by the County Boards of School Trustees in determining whether the prayer of a petition to detach should be granted or denied. All things being equal, the landowner, the taxes from whose property enables the school of the District to operate, the parents and students residing in the District, should be permitted to choose the school the pupil should attend.' " (62 Ill. App. 2d 467, 475-76.)

In the *Wheeler* case, four students from one family were the only students affected by the change of boundary. We affirmed a decision of the circuit court granting detachment and annexation, which reversed a decision by the regional board in that case. 62 Ill. App. 2d 467, 478.

■■ In the instant case, no substantial effect has been shown to result to the school districts involved or to the students in those districts. Valid reasons in support of the proposed change have been shown to exist, and specific benefits have been shown to result to the children most affected by the boundary change, being the Francois children. In these circumstances, detachment and annexation are properly granted, and we find no error in the circuit court's decision, based upon its findings that such detachment and annexation met the requirements set forth in the statute. The regional board's denial of the petition was not supported in the record, and its decision was properly reversed by the circuit court.

■■ The school districts argue that because the regional board did not enter findings of fact, the cause must be remanded to the regional board for entry of such findings. We do not agree. Such remandment would be justified if a number of issues or complex issues were involved and it was unclear which evidence in the record was relied upon in deciding those issues. It might also be justified where the record was sufficient to support an administrative decision, but because of the lack of findings and the presence of conflicting testimony, the specific factual basis underlying the decision was unclear. Such situations are not presented in the instant case. Here the record clearly shows the lack of significant detrimental effect upon the districts and their pupils as well as the educational benefits to the students most directly effected by the boundary change. On such a record, no purpose would be served by a remandment for findings.

(*Board of Education v. County Board* (1978), 60 Ill. App. 3d 415, 418-19, 376 N.E.2d 1054.) The record, as already established, would not support a decision to deny the petition.

The decision of the Circuit Court of Grundy County is affirmed.

Affirmed.

SCOTT, P. J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully dissent from the reasoning and result reached by my colleagues. First of all I believe the proceeding should have been referred back to the Regional Educational Board to make findings of fact as required by statute, in which event I would not reach and I do not believe either the trial court or this court should have reached the merits of the controversy. In the second place, on the substantive issues I do not agree with the reasoning of my colleagues which approves the conclusion of the trial court that the action of the Regional Board of Trustees was against the manifest weight of the evidence.

According to the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 274) "* * * the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." Where, as in the case at bar, there are admittedly no findings on questions of fact in any order of the Regional School Board, essential elements for reviewing the decision of the Board are lacking and consequently no meaningful administrative review is possible pursuant to the statutory mandate. (*Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 329 N.E.2d 218, makes this requirement clear. See also *Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334, 394 N.E.2d 69.) In *Board of Education v. County Board* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054, which was a school detachment-annexation case, the court considered the problems of findings of fact but concluded there were sufficient findings to enable both the trial court and the appellate court to review the determination of the Board. It should also be noted that in the foregoing case both the trial court and appellate court affirmed the determination of the Board rather than adopting findings and conclusions contrary to those of the Board.

In any event, the rationale for both requiring findings of fact and presuming them *prima facie* true and correct will justify a result contrary to that reached by the trial court and my colleagues. Where a final determination or conclusion is dependent on the existence or nonexistence of several or many underlying facts or factual standards, the process of fact finding itself then tends to support a particular result. Without such a step

by step process the meaningfulness of the final result is reduced, its logic remains uncertain and its validity untested by the necessary supporting ingredients. Of equal importance in the administrative process is the role of findings of fact upon judicial review. Where there are findings of fact as there should be, the court of review then is able to focus its attention on whether such findings are supported by evidence, whether the findings are logically relevant to the final determination and whether the administrative agency has exercised its professional responsibilities in the process of determining the result. At the same time the existence of findings of fact by the agency preclude or at least diminish the tendency of a court of review to make independent findings of fact of its own, which certainly it is freer to do in the absence of factual findings by the administrative agency.

Because the Regional School Board did not make any findings of fact we do not have the benefit of the resolution of the numerous questions of fact which are relevant to detachment-annexation proceedings. Certainly there are statutory criteria, but without any resolution of the factual questions there were no findings presumed to be true and correct except the general conclusion of the Board that the petitioners had not proved their case. Both the trial court and my colleagues have made findings of fact on questions of fact and have resolved all disputed factual issues in favor of the petitioners. Where the trial court and my colleagues have made independent determinations respecting the standards applicable to detachment-annexation petitions they do so in the absence of any findings of the Regional School Board, so that their further conclusion that the School Board's determination is against the manifest weight of the evidence is based on independent determinations of disputed evidentiary facts and not on determinations by the School Board.

This issue is dismissed in the opinion of my colleagues as if it were of no significance or concern and in fact might well be considered dictum since they had already decided the trial court was right in deciding the Regional School Board was wrong. Remandment for determination of findings of fact would not be a useless act, since it would essentially permit and require that the Regional School Board carry out its function rather than permitting the courts to initiate the fact finding process.

With respect to the substantive issues and the existence of the various factors justifying detachment and annexation, I find the principal case relied upon by the majority, *Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 210 N.E.2d 609, particularly inapposite. It requires only a casual reading of the *Wheeler* case to learn that the underlying factual situations are significantly different on practically every aspect so that by negative implication the *Wheeler* case really requires the action of the Regional School Board be approved. Without

intending to discuss the differences exhaustively, I would note the *Wheeler* case presents the rural-urban school dichotomy not present in the instant case, relative distance problems not present in the instant case, a subdivision in which the lots could not be sold because of their location within the rural district and, finally, parents of children who paid tuition for their children to attend the annexing district. In this connection it should be noted that the petitioners involved in the instant case were not paying tuition to the Coal City School District as they were probably obligated to do but on the contrary were concealing the true state of facts by representing that the child lived with a relative who resided in the district. It well may be inferred that one of the motives for the instant petition was the desire of the Coal City District to receive tuition from petitioners for their child's attendance at the Coal City school, to which tuition Coal City was probably entitled.

The majority seems to find there were educational benefits for the child's attendance at the school and no financial detriment to the school districts from which the area was detached. With respect to the educational benefits, I can only say that each benefit was disputed and that a finding either way would have been supported by sufficient evidence. For that reason, with respect to educational benefits, any decision which the Regional School Board might have made would not have been against the manifest weight of the evidence. I would make the same observation regarding the financial detriment to the losing districts. While the amounts of tax revenue lost are not in themselves great, the districts are small and such sums could have more significance in relation to the finances of the districts as a whole than these dollars would indicate. Furthermore, if the children of the petitioners are no longer in the districts, can there be any doubt that the annexing district will be desirous of adding the other land of the petitioners in support of the equitable claim that as long as the petitioners' children are attending their school, why should the land not be subject to the payment of school expenses?

I would either remand this case back to the Regional School Board for findings of fact or, alternatively, I believe the action of the Regional School Board should be approved.