DAVID E. DRESNER *et al.*, Plaintiffs-Appellants, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF KANE COUNTY *et al.*, Defendants-Appellees.

Second District    No. 85—0718

Opinion filed December 10, 1986.

Lawrence Jay Weiner and Joan M. Eagle, both of Weiner, Neuman & Spak, of Chicago, for appellants.

Terrence M. Barnicle, James P. Bartley, and Arthur C. Thorpe, all of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Petitioners, David E. Dresner, Mary Jane Dresner, Thomas Fitch, Victoria P. Fitch, Janice A. Simpson, John A. Zaleski, and Virginia Zaleski (petitioners), all residents or landowners within a 480-acre tract of land located in Barrington Hills, appeal from the order of the circuit court of Kane County affirming the decisions of both the re-

gional board of school trustees of Kane County (Kane regional school board) and the regional board of school trustees of Lake County (Lake regional school board) dismissing their petition pursuant to section 7—6 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 7—6) to detach the parcel of land from the Dundee Community Unit School District No. 300 (District 300) and to annex this area to the Barrington Community Unit School District No. 220 (District 220).

Petitioners raise the following issues for our review: (a) whether the decision of the circuit court affirming the orders of the two regional school boards is against the manifest weight of the evidence, (b) whether the decision of the circuit court must be reversed and remanded to the two regional school boards for the entry of findings of fact, and (c) whether the trial judge erred when he denied petitioners' motion to transfer the matter to another judge.

The territory, situated in District 300, although bounded by District 220 on the south and east, consists of 55 tax parcels totaling 480 acres, 10 of which are owned by the individuals previously listed. Three of the four families who signed the petition, however, do not own any property which adjoins District 220. Their property, excluding the Zaleskis', borders the north and west of the proposed detached territory and totals 20 acres. The remaining 460 acres separates District 220 from these three owners. The Zaleskis' home is on that portion of their property in District 220, and their children attend school in that district. Only six adults and six children resided in the territory sought to be annexed at the time of the hearing below. The territory is within the village of Barrington Hills, although various maps show that the property where petitioners' homes are located is at the far western edge of the village and is in a rural area surrounded by undeveloped land. Except for the Zaleskis, the other petitioners' homes are on lots of five to seven acres. Additionally, each district is a community unit school district encompassing numerous municipalities or parts of municipalities.

There are no allegations that the petition was not in compliance with the statutory requirement of section 7—6 of the School Code (see Ill. Rev. Stat. 1981, ch. 122, par. 7—6), and the parties stipulated to the fact that two-thirds of the registered voters in the territory signed the petition. Specifically, the petition asserted that the change of boundaries will be in the best interests of the area's schools and the educational welfare of its pupils; that the natural community and social centers and interests of the territory are in Barrington Hills, Barrington, and District 220; that detachment would not result in a significant adverse economic impact on District 300 and would not

jeopardize the educational resources of the involved school districts; that the benefit to be derived by District 220 and the detached area clearly outweighs any detriment to District 300 and the surrounding community; that the area is attached to District 220; that no non-high school district or new school district will be created; that the proposed detachment and annexation will not affect either districts' ability to meet recognition standards of the State; and that the area is located in Barrington Hills, a village substantially located in District 220.

At the hearing before the Kane regional school board, Victoria Fitch testified that she has lived in the area sought to be detached with her husband, Thomas, and her three children, ages 13, 8, and 6 years old, since 1968, and that she grew up in Barrington prior to moving into the area. Her neighbors are the Simpsons and the Dresners, and are the only residents in the area. Her children attend St. Anne's parochial school in Barrington because they belong to that church and know the principal well; however, she would take the children out of St. Anne's and place them in a public school if they annexed to District 220. She also stated that she belonged to the Barrington Library District, Countryside Park District, Barrington Hills Country Club, Barrington Pony Club, and the Friends of the Barrington Library and that her children also participated in activities within some of these organizations. Their family doctor and hospital facilities are located in Barrington; she does her shopping in Barrington; and their neighbors not located within District 300 attend Barrington public schools. Her close friends' children attend Barrington public schools. She does anticipate that property values would increase if the detachment and annexation is successful. She stated that District 220 is her children's "natural community of interest." When they moved to the area, however, school was not a major concern, although they felt at the time that District 300 was satisfactory.

Mary Jane Dresner testified that she lives in Barrington Hills with her husband, David, and two children, ages 13 and 7 years old. Her children attend St. Margaret's parochial school, located in District 300. They moved to their present location in late 1979 from Georgia, where their children attended public schools. There is a District 300 elementary school 2.1 miles away from their home, and, after they moved to the area, she enrolled her youngest child in kindergarten in District 300 for the second semester. Her child, however, was sent to a school 4½ miles away and was bussed with special education students, although the bus picked up her child right in front of the house. The bus service for St. Margaret's is sufficient except that the children are picked up on a very heavily traveled road further

away from her home. Mrs. Dresner belongs to the Barrington Library and the Countryside Park District (in Barrington Hills), receives Barrington Hills police and fire protection, attends church at both St. Margaret's and St. Anne's, and is a member of the Barrington Historical Society. Her children do not belong to any clubs in District 220 except the Fox River Valley Pony Club in Barrington. Although her children swim at the Barrington Country Club, District 300 also has a pool, but she does not know about any District 300 swim programs. The children's friends are not within walking distance. She sent her children to the parochial school because her children had a "sense of community with that school." When they purchased their house, the Dresners were aware of the school district in which they would be situated, but they did not know of any difference between District 300 and District 220. St. Margaret's is located near Eastview (a District 300 elementary school). She is also aware of the possibility of property values increasing if the petition is successful. She feels that because of their location in District 300, her children are being taken out of their natural environment, preventing them from having "a sense of community."

David Dresner testified that he is an actuary with an accounting firm and all his partners reside in Barrington, that he belongs to a Barrington running club, and that his friends and associates live in Barrington. He feels that it is important for his children to go to school with the children they play with. His daughter has a playmate 1½ miles away who belongs to the same pony club. Most of the children's friends live a mile away in District 220. He contacted Dr. Trevarthen, superintendent of schools in District 300, concerning why his children were being sent to a school four miles away when they were already enrolled in a school two miles away and received what he termed an unsatisfactory answer. Dresner, however, did not state that he had any objection to the type of students found at the school. He never made any evaluation of either school district but would take his children out of St. Margaret's if the petition was granted. The children, however, are not attending St. Anne's because his wife does not want to drive into Barrington every day.

Dorothy Calven, a realtor in the Barrington area for 21 years and the listing agent for most of the property in the proposed detachment area, testified that no one will purchase the undeveloped property, listed for sale in five-acre lots, because it is not located in the Barrington school district. She also noted that there is approximately 20% to 30% difference in the price of land between the two districts. Although she agreed that vacant land sales were slow everywhere be-

cause of the high interest rates, she stated that she has been unable to sell the lots because they are located in District 300.

Judith Svenson, a successful petitioner for detachment of property within District 300 and of annexation of that property to District 220 (see *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054), testified that the effect of transferring her children from District 300 to District 220 was good because District 220 is their "natural community," has a high degree of parental participation, and provides good facilities, although she had no knowledge of the quality of the programs in District 300.

Janice Ann Simpson, a resident of the area with her husband, David, and her 15-month-old daughter, testified that her husband is employed in Rolling Meadows, that she shops, attends church, associates with friends, and visits her doctor in Barrington, and that she believes "in continuity between the interests and participation and family life that's associated with Barrington." She admitted, however, that her family did not look at schools when they purchased their home, but knew their home was located within District 300.

The parties stipulated that the curriculum taught in both districts is compatible, that both districts meet State recognition standards, that 82% of the students in District 220 are college-bound, while 40% to 50% of the students in District 300 are college-bound, that District 220 has a French exchange program, a planetarium, and a swimming pool, and that traveling distances from petitioners' homes to either a District 300 school or a District 220 school are roughly equivalent.

Dr. William Hazard, a professor of education at Northwestern University and an expert in the field of education, testified on behalf of petitioners that he was familiar with the recent Illinois Supreme Court decision *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240 (*Golf*), because he testified as an expert against the detachment in that case. Dr. Hazard then referred to the financial statement submitted by the secretary of the Kane regional school board concerning the two districts and opined that based upon these figures, he would consider the loss to District 300 of the land to be detached "to be minuscule and of no consequence [because] [i]ts [*sic*] less than two-tenths of one percent *** of [the] tax revenues produced by the remaining portion of the assessed valuation of the [district]." He also noted that there would be no loss of students as the five children do not attend District 300 schools and stated that he can foresee the only adverse effect as being a $23,000 decline in tax revenues based on the current tax net-assessed valuation.

He concluded that the testimony presented by petitioners suggested that there are two benefits afforded to the children: (1) attending a school where their social and informal contacts are with their educational peers, and (2) attending a school where their community interest has been established by combining their school attendance with whom they socialize. He feels that this view falls within the "whole child" concept expressed in *Golf*, and that the natural community for the children would have to be District 220. The only detriment to the children remaining in District 300 would be that they would be artificially forced into a school setting with none of their friends. He is of the opinion that the detachment of the area from District 300 and the annexation of the area to District 220 would be in the best educational interests of the children. Cross-examination revealed that Dr. Hazard testified against detachment in the *Golf* case after he consulted the staffs of the affected districts; however, he did not consult with anyone from District 300 prior to rendering his opinion in this case.

District 300 presented evidence in opposition to the petition. Gordon E. Schulz, director of finance and treasurer of District 300, testified that he prepares the budget, reports revenues, coordinates the long-range planning, and manages the real estate, insurance programs, and funds. He compiled figures concerning enrollment in District 300 which indicated that enrollment peaked in 1973 with 12,668 pupils but has decreased to the present figure of 10,782 pupils. District 300 closed one elementary school prior to the hearing and is planning to close two more elementary schools during the summer. Presently, District 300 is utilizing only 71.4% of its building capacity. Schulz also stated that a 1981 demographic study of District 300 to determine the projected enrollment in 1990 based on three demographic patterns indicated that: (1) based upon limited growth, meaning out-migration of residents with no new construction, enrollment was projected as severely declining; (2) based upon high growth, meaning increase in housing, enrollment was projected as increasing by 13,000 students; (3) based upon moderate growth, enrollment was projected as dipping slightly. Noting that the last official equalized assessed valuation was $352,720.919 and listing the maximum tax rates for the various operating funds, Schulz stated that although District 300 is levying the maximum tax rate to cover their operating funds, the fund has steadily decreased from an excess amount in 1977 to a deficit in 1981 with the projection for future expenditures over the next three years, even considering the planned school closings, as creating a major deficit.

Schulz also testified that 1,460 acres of Barrington Hills are presently located in District 300. He presented enrollment figures for both districts, listing District 300 with 10,782 students and District 220 with 6,485 students. Based upon the previously stated equalized assessed valuation of each district, he concluded that the equalized assessed valuation per student was $32,713.87 for each student in District 300, while it was $60,641.90 for each student in District 220. These figures are important in determining the financial condition of a school district. He also stated that based upon the immediate projected tax loss from the detailed area (as it currently exists) of $26,630.90 and no immediate loss of students, the increase of State aid would be between $14,104 and $22,355, leaving the immediate net loss to District 300 at between $4,275 and $12,562. He continued, however, that he also calculated the projected loss to District 300 based upon the area being developed. According to Schulz, with 80 four-bedroom homes being built on lots valued at $50,000 per lot (converts to a market value of $280,560 per house, which he determined to be the average for Barrington Hills), at the 1981 tax rate, $252,722 in revenues would be lost. Projecting 115.2 students coming from the newly developed area, the projected State-aid loss would be $189,750. The total loss would be $442,472 plus an $8,000 right-of-way fee from Commonwealth Edison. District 220 would only assume $31,047.68 of District 300's bonded indebtedness plus $6,916.64 in yearly interest.

Schulz' figures were attacked on cross-examination as unreliable because he did not determine how much of the detached area is actually developable; nor did he consider how much other undeveloped land is located in District 300. The specific calculations projected by Schulz concerning the number of houses, the cost of the houses, and the number of students were also attacked. It was noted that if the assessed valuation goes down in a district, the State aid per pupil increases, although presently the area to be detached produces more revenue than expenses because no children attend District 300 schools.

Dr. Robert W. Trevarthen, superintendent of schools in District 300, testified that District 300 has a network of schools covering seven communities and parts of four others. He stated that he feels that a child's community interest will center on whatever school he attends and not necessarily on the community which draws his family's interest. He lives in District 300 and his children attend District 300 schools. The benefit to the children would decrease if detachment and annexation were granted in this case because they would be going to a smaller district with small schools, which would decrease

their opportunities to participate in a variety of school activities. The major distinguishing factor between District 220 and District 300 students is their socioeconomic background. He also noted that students in both districts have done very well academically based upon their ability. He perceives that granting the petition would render any long-range plans for the district useless and would make it very difficult to plan future expenditures if the boundaries of the district continue to be changed by a few individuals. Specifically, he pointed out that District 300 recently built a high school with the proposed detached area in mind.

The report of the secretary of the regional board, listing the financial and educational conditions of the districts involved and illustrating the probable effect of the proposed changes, noted that the proposed change would not adversely affect either districts' ability to maintain educational standards or State recognition.

The Kane regional school board took the matter under advisement and later entered its written order denying the petition. The board stated that it reviewed the testimony and exhibits submitted by both sides, considered any possible division of funds and assets, examined the effects on the condition of the territories and the ability of the districts to meet State recognition standards, and determined "[t]hat [it] is not to the best interests of the schools of the area and the educational welfare of the pupils that the proposed change in boundaries be granted."

Following statutory procedure (see Ill. Rev. Stat. 1981, ch. 122, par. 7—6), the Lake regional school board, after hearing the arguments of the parties, voted that the evidence, as it was presented in the record, was not sufficient to grant the petition and that the manifest weight of the evidence indicated that the district should remain intact for the benefit of all the children of the school district, and entered a written order denying the petition.

Petitioners filed their complaint in the circuit court of Kane County pursuant to section 7—7 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 7—7) for administrative review of the decisions of the two regional school boards, seeking reversal of the boards' decisions because they were against the manifest weight of the evidence. The trial court, after taking the matter under consideration, affirmed each of the regional school board's orders. Petitioners moved for reconsideration based on the fact that the order stated that the trial court had reviewed the record of the hearing when, in fact, counsel for petitioners was actually in possession of the record, preventing the court from reviewing the record. The motion also requested that

the matter be transferred to another judge. Realizing that it had not considered the record of the hearings, the trial court vacated its order affirming the school boards, ordered counsel to produce the record instanter, and refused to transfer the matter to another judge. After reviewing the remainder of the record, the court affirmed the decisions of the two regional school boards denying the petition.

Petitioners' first contention is that the decisions of the regional school boards and the judgment of the circuit court must be reversed as being against the manifest weight of the evidence because their proof clearly met the standard for the granting of a detachment and annexation petition as set forth in section 7—6 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 7—6) and as applied by our supreme court in *Golf* and subsequent appellate court decisions. In particular, they argue that, by comparison with other cases decided by the courts allowing detachment and annexation, the evidence presented here clearly established that the benefit to the people in the area outweighs the financial detriment suffered by District 300. Additionally, even accepting that the programs are equal, the "whole child" concept endorsed by the supreme court dictates that because the children's community of interest centers in Barrington Hills, they should be allowed to attend District 220 schools so they can received the best education available.

■ Our supreme court reaffirmed the role of the courts in the review process of administrative decisions concerning school board findings on detachment petitions in *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240, stating that "[i]t is, of course, the role of a regional board and not of the courts to make findings of fact, and its determinations and decisions will not be set aside on administrative review unless they are shown to be contrary to the manifest weight of the evidence." (89 Ill. 2d 392, 396, 433 N.E.2d 240.) As the findings of the regional board on questions of fact are considered *prima facie* true and correct (Ill. Rev. Stat. 1985, ch. 110, par. 3—110), "[i]t must remain for local boards to weigh the relevant factors to determine the action best serving our entire education system [and] [w]hen the entire record indicates *** that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed." (89 Ill. 2d 392, 396-97, 433 N.E.2d 240, citing *School Directors v. Wolever* (1962), 26 Ill. 2d 264, 268, 186 N.E.2d 281.) This approach, however, does not relieve a court of its obligation to examine the evidence in an impartial manner and to set aside an order which is unsupported by fact. (*Oakdale Com-*

*munity Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 195, 145 N.E.2d 736.) Judicial recognition of an order which is against the manifest weight of the evidence is not required; nor does the law allow a stamp of approval to be placed on the decision of an administrative agency merely because such agency heard the evidence. *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 392-93, 447 N.E.2d 478.

In determining whether to permit a transfer of land from one school district to another, the standards to be considered by a regional board are set forth in section 7—6 of the School Code, which provides, in part:

"The regional board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted ***." (Ill. Rev. Stat. 1985, ch. 122, par. 7—6.)

The supreme court in *Golf* expounded on the legislative standards to include other factors which could be considered by a regional board when determining whether a change in boundaries would serve the best interests and educational welfare of the area affected and to students within that area.

In *Golf*, the school district, in objecting to detachment, argued that the regional school board improperly considered the "whole child" concept and the "community of interest" as factors while reaching its determination that the detachment and annexation petition should be granted. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 396, 433 N.E.2d 240.) In response to the school district's argument, the supreme court set forth the statutory standard a regional board is expected to follow and also determined that "the benefit to the annexing district and the detachment area must clearly outweigh the detriment resulting to the detaching district and the surrounding community as a whole." (89 Ill. 2d 392, 397, 433 N.E.2d 240.) The court then stated that "[t]he 'whole child' factor and the closely related 'community of interest' factor are not improper considerations in determining the wisdom or unwisdom of shifting the boundaries of school districts" (89 Ill. 2d 392, 397, 433 N.E.2d 240) and explained why the "whole child" con-

cept and the "community of interest" concept could be considered by a regional board:

> "The ['whole child'] factor recognizes that extracurricular participation in social, religious and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement. *** If a child attends school in his natural community it enhances not only his educational opportunity but encourages his participation in social and other extracurricular activities that figure importantly in the 'whole child' idea." (89 Ill. 2d 392, 397-98, 433 N.E.2d 240.)

The court found that it was not error for the regional board to have considered these factors. (89 Ill. 2d 392, 399, 433 N.E.2d 240.) Decisions of the appellate court since *Golf*, however, have differed slightly as to the weight which should be accorded the "whole child" and "community of interest" concepts when determining whether to grant a detachment and annexation petition. See *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 392, 447 N.E.2d 478 (the court, in examining the standards a regional board should follow, stated that the supreme court has not established any one of these guidelines as an absolute rule and explained that its decision to apply the "whole child" concept was based on the fact that the supreme court considers it proper and many appellate courts have used this factor thereby suggesting that it should, at least, be evaluated during a hearing); *Granfield v. Regional Board of School Trustees* (1982), 108 Ill. App. 3d 703, 706, 439 N.E.2d 497 (the court stated that the most crucial factor requiring the granting of a petition is the location of the area to be detached to the social, recreational, and business associations of the children and parents who reside in this area, the underlying theory behind the "whole child" concept).

Petitioners' reliance on the facts of this case as being comparable to other decisions allowing detachment and annexation is misplaced. In *Golf*, the supreme court affirmed the granting of the petition because detachment would improve safety conditions in traveling to and from school, would enhance opportunities to participate in school, extracurricular, and community activities, would relieve overcrowding in the schools in the detaching district, and would increase efficiency through use of idle facilities in the annexing district. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 400, 433 N.E.2d 240.) Also, the court noted that the financial loss on the losing district could be lessened because the district was not levying its maximum tax rate and could increase the tax rate to compensate for the loss. (89 Ill. 2d 392, 401, 433 N.E.2d 240.) The other cases

also had significant factual differences. See *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 447 N.E.2d 478 (only two communities involved, the area was within the annexing community's boundaries and a substantial distance from the detaching community, transportation distance would be shortened and the safety would be increased if detachment was granted, there was an overall benefit to the annexing district, and a different statute which required "the will of the people of the area affected" to be considered (see Ill. Rev. Stat. 1985, ch. 122, par. 7—2.6) was being applied); *Granfield v. Regional Board of School Trustees* (1982), 108 Ill. App. 3d 703, 439 N.E.2d 497 (minimal loss of revenue, the traveling distance of less than 1 mile to the annexing district school was more beneficial than the almost 5-mile bus ride to the detaching district school, and the annexing district had more specialized programs for the student); *Board of Education v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 424 N.E.2d 808 (the detaching district was 6.1 miles away, had a vocational curriculum, and a less advanced educational program, while the annexing district was 3.7 miles away, was college-oriented, and had a superior educational program); *Francois v. Regional Board of School Trustees* (1981), 97 Ill. App. 3d 112, 424 N.E.2d 617 (the school curriculum in the annexing district is oriented toward petitioner's children's interests and the change would have no substantial effect on detaching area); *Wirth v. Green* (1981), 96 Ill. App. 3d 89, 420 N.E.2d 1200 (area 2 miles from the annexing community and within 4 miles of its schools while 5 to 15 miles from the schools in the detaching area, the children of petitioner are enrolled in an annexing district school and participating in programs unavailable in the detaching district, and granting petition will not result in a benefit or detriment to either district); *Manning v. Regional Board of School Trustees* (1981), 92 Ill. App. 3d 945, 416 N.E.2d 381 (where the distance was comparable and the testimony clearly indicated a benefit to the children, petition was granted); *Board of Education v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, 405 N.E.2d 495 (allowed the annexation of an area with only one student, who was a nationally ranked tennis player, because the annexing district had the program to develop these skills and development of these skills would also enhance his future educational and career opportunities); *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 167 N.E.2d 21 (traveling distance of 10 to 11 miles to the detaching school while only a distance of three to four miles to the annexing school and the increased participation in school activities which would inevitably result from the shorter traveling distance).

Here, there is no indication that participation in school activities, other than the foreign exchange program, would be enhanced. There was no overcrowding problem in District 300, and, in fact, the detachment eventually could cause more school closings in District 300. It is not known what effect annexation of the area would have on District 220. The traveling distance for the children would not be improved as the distance from each school is comparable. There is no indication that there are any special needs of the children which would be satisfied by the programs in District 220. While *Golf* noted that financial loss would be inevitable, District 300 is levying its maximum tax rate and, unlike the detaching district in *Golf*, cannot increase its tax rate to compensate for the loss of land without a referendum. While the projected-future-loss argument presented by District 300 in this case was rejected in *Schott*, the court there found that the larger detaching district was capable of absorbing the loss. Petitioners have not demonstrated this. District 300 has been closing schools and may be forced to close more. The financial loss to District 300 is not only the loss of some tax property, but also the probable increase in tax for the remaining residents, as well as the cost of maintaining additional unused school property left vacant in future years.

Petitioners, however, emphasize that they reside in the village of Barrington Hills, that their children's activities are associated with that community, and that these factors mandate annexation of their property to District 220 for the educational welfare of their children. While the petitioners live in the village of Barrington Hills, which is mostly within District 220, their homes, situated on five- to seven-acre lots, are on the far edge of the municipality and are in a rural area surrounded by undeveloped land. Both school districts are unit districts consisting of numerous municipalities thereby not identifying with any one community. The testimony of the parents centered on where their own social community was located while only briefly touching on their children's social community. It was not explained where the children spent their after-school time and with whom. There was testimony that the children's friends were more than 1 mile away and not within walking distance. There was no testimony indicating that the children are prohibited from participating in extracurricular school activities because of the location of their homes or that the children had some exceptional talent which would be nurtured by school programs in District 220. Although the parents mentioned some of the activities in which their children participated and where these are located, they did not state how much time their children spent at these activities, who else participated with them, and if

these activities related to their present school. It was not shown whether the children are prohibited from using the District 300 library system because of its location; nor was it demonstrated that the future educational welfare of the children would be enhanced in District 220. Similar questions were addressed in other appellate cases allowing detachment because of the children's interests. (See, *e.g.*, *Manning v. Regional Board of School Trustees* (1981), 92 Ill. App. 3d 945, 948-49, 416 N.E.2d 381; *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 508-11, 167 N.E.2d 21.) The parents here present their interests in their social groups and exhibit the conveniences they would gain by the boundary changes. Although the wishes or conveniences of petitioning parents and their children are to be considered, more than the personal preference of petitioners must be shown to warrant a change in district boundaries. *Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 400, 433 N.E.2d 240.

■■ ■ Petitioners failed to present sufficient facts to demonstrate that the benefit to the area and its residents clearly outweighed the detriment to be suffered by District 300 if the detachment and annexation petition was granted. Nor did they establish a need for their children to belong to District 220 rather than District 300. As the burden of establishing that it is in the best interests of the area schools and the pupils' welfare to allow the change of boundaries is on petitioners (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 664, 497 N.E.2d 152), we find that the decisions of the regional school boards and the order of the circuit court are not against the manifest weight of the evidence.

■ Petitioners alternatively contend that the cause must be reversed and remanded for further proceedings because the decisions of the regional school boards did not contain findings of fact necessary for this court to properly review the determination of an administrative agency. Although there is no statutory requirement that findings of fact be made by the regional school boards, petitioners argue by analogy that, in the context of other types of administrative proceedings, courts have determined that no judicial review of an administrative decision was possible where no findings of fact were made by the administrative agency. (See *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 103-04, 329 N.E.2d 218; *Melrose Park National Bank v. Zoning Board of Appeals* (1979), 79 Ill. App. 3d 56, 59, 398 N.E.2d 252.) Relying on *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054, however, District 300 argues that where there is only a single subject area to be

reviewed and the statute does not require findings of fact to be memorialized in any particular form, it is unnecessary to remand a case for a formal issuance of a written finding.

Petitioners correctly point out that the orderly process of judicial review of an administrative agency's decision is not possible where the agency fails to make specific findings of fact because a court is only to review the grounds upon which the agency acted, and if those grounds are not clearly disclosed, a court cannot review them. (See *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 103-04, 329 N.E.2d 218.) Courts have been reluctant, however, to reverse and remand decisions of regional school boards in detachment and annexation petitions for failing to enter extensive findings of fact because only a single issue is presented to the board, that being whether it is the best interests of the schools in the area and educational welfare of the students (see Ill. Rev. Stat. 1985, ch. 122, par. 7—6), making a detailed and extensive finding of fact unnecessary. (See *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 418-19, 376 N.E.2d 1054; see also *Francois v. Regional Board of School Trustees* (1981), 97 Ill. App. 3d 112, 118-19, 424 N.E.2d 617 (dissent argues that finding of fact is necessary); *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 234-35, 407 N.E.2d 1084; *Board of Education v. Regional Board of School Trustees* (1980), 85 Ill. App. 3d 394, 396-97, 407 N.E.2d 101).) As the *Reinhardt* decision involved the discharge of a teacher after a hearing concerning a variety of allegations not related to one another and the board did not state the reasons for its decision to discharge the teacher, we find the decision inapposite.

■ Here, as in the District 300 case cited above, there was only one question for the regional school board to decide, and much of the evidence was not in dispute. The Kane regional school board also had a number of written stipulations presented to it in the record. The board itself stated generally that it considered the possible divisions of funds and assets, examined the effects on the territories, and determined that it was not in the best interest of schools in the districts and not for the educational welfare of the students to grant the proposed detachment and annexation. While these findings apparently are not as detailed as those in other detachment decisions (see *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 390-92, 447 N.E.2d 478; *Granfield v. Regional Board of School Trustees* (1982), 108 Ill. App. 3d 703, 704-05, 439 N.E.2d 497), we hold that under the evidence in the record, these findings are sufficient to allow an orderly review by the circuit court, and this court, based upon the peti-

tion, pleadings, and transcripts. To remand this cause to the regional school boards for a formal issuance of extensive written findings would be "a useless act which would extol form over substance." *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 419, 376 N.E.2d 1054.

■ Petitioners' final contention is that the trial court erred when it refused to transfer the cause to another judge. Petitioners argue that after the trial court was informed by petitioners that it had rendered its decision without reviewing the entire record, it was highly unlikely that their cause received unbiased consideration because the trial judge could not help but be embarrassed by his mistake and that this refusal to transfer the case to another judge prejudiced their case. While due process requires disqualification of a judge where there is a likelihood of bias or an appearance of bias such that the judge is unable to hold the balance between vindicating the interests of the court and the interests of a party (see *Taylor v. Hayes* (1974), 418 U.S. 488, 501, 41 L. Ed. 2d 897, 909, 94 S. Ct. 2697, 2704 (involving a criminal prosecution where counsel for the accused was repeatedly held in contempt and the record revealed a personal controversy thereby preventing the judge from ruling on the contempt charge)), the alleged bias, that being the speculation of embarrassment because of his decision without considering the entire record and being corrected by counsel, has not been shown on this record to have affected the court's decision. The fact that a judge has ruled against a person in a prior case is not alone sufficient reason to disqualify the judge. (See generally *People v. Taylor* (1984), 101 Ill. 2d 508, 518, 463 N.E.2d 705.) Petitioners have failed to establish any prejudice by the trial judge's ruling on their case.

For the foregoing reasons, the decision of the circuit court of Kane County affirming the orders of the Kane regional school board and the Lake regional school board is affirmed.

Affirmed.

NASH, P.J., and WOODWARD, J., concur.