JOHN S. BAERST *v.* STATE BOARD OF EDUCATION ET AL.
(12224)

O'CONNELL, LAVERY and SCHALLER, Js.

---

Argued January 13—decision released May 31, 1994

*David P. Burke,* for the appellant (plaintiff).

*Carroll T. Willis, Jr.,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellee (named defendant).

*Frank W. Murphy,* with whom, on the brief, was *Barbara L. Coughlan,* for the appellee (defendant New Canaan board of education).

SCHALLER, J. The principal issue raised by this appeal is whether residency for purposes of entitlement to public school attendance by a child whose home sits astride a boundary line between two municipalities should be determined solely by considering the physical location of the dwelling or by taking into account the full constellation of interests related to the communities involved.

The plaintiff appeals from the judgment of the trial court, in an administrative appeal, sustaining the decision of the defendant state board of education. The board had denied the plaintiff's daughter, Virginia, the right to attend public schools in New Canaan because Virginia was not a resident of that town but was, instead, a resident of the city of Norwalk. We reverse the judgment of the trial court.

The procedural history of this case may be summarized as follows: In January, 1989, the plaintiff requested that the New Canaan school superintendent grant school accommodations for Virginia. This request was denied on the ground that a majority of the plaintiff's property taxes were not paid in New Canaan. The plaintiff's request for a hearing before the New Canaan board of education pursuant to General Statutes § 10-186 (b)[1] was granted. At the hearing held in April, 1989, the board upheld the superintendent's decision. The plaintiff further appealed the decision to the state board of education, which appointed a hearing board. In July, 1989, after the hearing board sustained New Canaan's decision, the plaintiff brought an appeal to the Superior Court. In May, 1991, the trial court concluded that the decision had been reached on procedural error and remanded the matter for rehearing. The rehearing was held in November, 1991. The second hearing board determined that Virginia was not entitled to attend school in New Canaan. In that decision, the hearing board concluded that the dispositive factor in the determination is the location of the habita-

[1] General Statutes § 10-186 (b) (1) provides in pertinent part: "If any board of education denies such [school] accommodations, the parent . . . of any child who is denied schooling . . . may, in writing, request a hearing by the board of education. . . . The party claiming ineligibility for school accommodations shall have the burden of proving such ineligibility by a preponderance of the evidence, except in cases of denial of schooling based on residency, the party denied schooling shall have the burden of proving residency by a preponderance of the evidence."

ble portion of the house. The plaintiff thereafter appealed that decision of the hearing board pursuant to General Statutes §§ 10-187 and 4-183, naming the New Canaan, Norwalk, and state boards of education as defendants. The trial court upheld the hearing board's decision, concluding that geography played the dominant role in the interpretation of title 10 statutes. This appeal has been brought under General Statutes § 51-197b.[2]

The facts are undisputed. In 1985, the Baerst family moved from a house located wholly within New Canaan to their present home, located at 446 Brookside Drive, which is situated on a 2.32 acre parcel of land, two acres of which are in Norwalk and the remainder in New Canaan. The front door opens onto steps that are divided by the town line, and the side door is located in New Canaan. The road frontage is divided between Norwalk (179 feet) and New Canaan (220 feet). A majority of the real property taxes is paid to Norwalk for land and house, whereas only 5 percent for land only is paid to New Canaan. The family uses a New Canaan mailing address, to which the New Canaan post office delivers mail. In addition, the Baersts have used numerous New Canaan services such as emergency ambu-

[2] General Statutes § 51-197b provides in pertinent part: "(a) Except as provided in section 31-301b, all appeals that may be taken from administrative decisions of officers, boards, commissions or agencies of the state or any political subdivision thereof shall be taken to the superior court.

"(b) Except as provided in section 4-183, the superior court, after a hearing, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from.

"(c) So much of any special act as is inconsistent with this section is repealed.

"(d) . . . [T]here shall be a right to further review to the appellate court under such rules as the judges of the appellate court shall adopt.

"(e) The procedure on such appeal to the appellate court shall be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the superior court unless modified by rule of the judges of the appellate court. There shall be no right to further review except to the supreme court pursuant to the provisions of section 51-197f."

lance services, snow removal, and police services. The hearing board found the family members' social and community activities to be "overwhelmingly focused" on New Canaan organizations. The board further found that their daily lives are focused in the New Canaan community. A New Canaan address is listed on their auto registration and driver's licenses; also, they pay personal property taxes on automobiles to New Canaan, and are registered to vote, and have repeatedly done so, in New Canaan. They have residents' library cards from the New Canaan Public Library and participate in library activities. The Baerst children play predominantly with New Canaan residents.

We note, at the outset, that the standard of review of administrative agency decisions is well established. " '[J]udicial review of administrative conclusions of law is limited to a determination of whether, in light of the evidence, those conclusions are unreasonable, arbitrary, illegal or an abuse of discretion.' " *Foti* v. *Richardson,* 30 Conn. App. 463, 466, 620 A.2d 840 (1993), citing *Fleischman* v. *Board of Examiners in Podiatry,* 22 Conn. App. 181, 184, 576 A.2d 1302 (1990). A broader standard of review, however, is warranted where, as in the present circumstances, we are presented with an issue of first impression involving the applicability of General Statutes § 10-220 (a). In such instances, "it is the function of the courts to expound and apply governing principles of law." *Foti* v. *Richardson,* supra, 466, citing *National Labor Relations Board* v. *Brown,* 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965). Further, "[o]ur review must comport with the well settled principles of statutory construction." *Foti* v. *Richardson,* supra, 466. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. . . ." *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

It is well established under Connecticut law that, with several specific exceptions,[3] residence is the critical factor determining where a child attends school. General Statutes § 10-184 mandates that a parent or other person having control of the child arrange for attendance at the "public school in the district wherein such child resides . . . ." Section 10-186 places a duty on local and regional boards of education to provide school accommodations to eligible children residing in the school district.

The critical provision of General Statutes § 10-220 (a) at issue in this case provides: "Each local . . . board of education shall . . . make such provisions as will enable each child of school age, *residing in the district* to attend some public day school for the period required by law . . . ." (Emphasis added.) Construction of this provision turns on the meaning of the term "residing," which is not explicitly defined in title 10.

In determining that the Baerst family resided in Norwalk, rather than in New Canaan, the hearing board conducted a de novo hearing pursuant to § 10-186. The hearing board concluded essentially that Virginia Baerst did not reside in New Canaan for purposes of school accommodation because a majority of the house in which she lives is located in a municipality other than New Canaan. Thus, the actual physical location of the property was the governing factor for the board. In support of this determination, the board cited a series of out-of-state decisions supporting the so-called "majority approach" to the subject.[4]

---

[3] See General Statutes § 10-75 et seq. (governing school accommodations for physically and mentally handicapped students); General Statutes § 10-90 et seq. (governing students attending vocational schools); General Statutes § 10-66a et seq. (governing regional schools).

[4] For example, the board cites the case of *East Montpelier* v. *Barre,* 79 Vt. 542, 66 A. 100 (1906), where the Vermont Supreme Court sought to determine the location of a house that was divided six-sevenths in one town

Although noting the absence of any Connecticut cases resolving the issue, the board did take note of several Connecticut cases addressing residency in somewhat different contexts. The board relied principally on *Don* v. *Don,* 142 Conn. 309, 311, 114 A.2d 203 (1955), in which our Supreme Court reasoned that "[a] resident of a place is one who is an actual stated dweller in that place," in reaching its conclusion that the plaintiff was a resident of Hartford County for the purpose of legally changing her name. The Supreme Court in *Don* relied on its decision in *Yale* v. *West Middle School District,* 59 Conn. 489, 491, 22 A. 295 (1890), in which the residence of a child living with her aunt, rather than her parents, for purpose of school accommodations, was at issue. Therein, the court determined that "[d]omicil . . . is the actual or constructive presence of a person in a given place, coupled with the intention to remain there permanently; and as a minor cannot exercise an independent intent in this manner, a minor can have no domicil other than that of the parent or guardian. But the facts do show that she had a residence there in the ordinary and popular meaning of the word."

and one-seventh in another. In determining the legal status of the building, the court looked to the "location of that part of the structure [that is] most closely connected to the primary purposes of the dwelling." Id., 545. In another case, the residence for the purpose of voting privileges for temporary ranchhands on a farm located on a boundary line was determined by looking to the location of the dining room and sleeping quarters. *Gray* v. *O'Banion,* 23 Cal. App. 468, 138 P. 977 (1913). A similar approach was adopted by the Appeals Court of Massachusetts in *Teel* v. *Hamilton-Wenham Regional School District,* 13 Mass. App. 345, 433 N.E.2d 907 (1982), in which school children who resided in a house bisected by the town line were found to be residents of the town in which "substantial portions" of the dwelling were located. In reciting the "majority approach," the hearing board also relied on *Blaine* v. *Murphy,* 265 F. 324 (D. Mass. 1920), in which domicile was determined to be located where the dwelling, including the sleeping and eating quarters, was located. In addition the board cites to *Turner* v. *Board of Education,* 231 S.W.2d 27 (Ky. App. 1950), in which the Kentucky Court of Appeals determined that children whose homes were more than one-half within the city of Mayfield were to attend that city's schools for purpose of free school accommodations.

The board relied further on the 1 Restatement (Second), Conflict of Laws § 18, comment (h) (1971), which notes in part that where a dwelling is cut by a boundary line, "[u]sually, the domicil will be in that political division where the major portion of the dwelling place is located, particularly if only an uninhabitable part lies in the other." (Emphasis added.)

In upholding the hearing board's decision, the trial court, endorsed the hearing board's reasoning and also determined that the decision comported with the "general statutory scheme for allocating responsibility for education under Connecticut law. That scheme is based on geography, not affinities." The court rejected the plaintiff's claims based on intent in reliance on General Statutes § 10-253 (d),[5] the best interest of the child, and constitutional entitlement to suitable education based on *Horton* v. *Meskill,* 172 Conn. 615, 627, 376 A.2d 359 (1977).

In support of his position, the plaintiff presses the following arguments: (1) the principal out-of-state cases support a fact based approach that takes into account the particular circumstances of each case rather than the "bright line" test adopted by the hearing board; (2) 1 Restatement (Second), supra, comment (h), specifically endorses an approach based on the "center of

---

[5] General Statutes § 10-253 (d) provides in relevant part: "Children residing with relatives or nonrelatives, when it is the *intention* of such relatives or nonrelatives and of the children or their parents or guardians that such residence is to be permanent, provided without pay and not for the sole purpose of obtaining school accommodations . . . shall be entitled to all free school privileges accorded to resident children of the school district in which they reside." (Emphasis added.) See also *Board of Education* v. *Dept. of Education,* Superior Court, judicial district of New Haven, Docket No. 324011 (October 14, 1992), in which General Statutes §§ 10-220 (a) and 10-253 (d) are read in conjunction as not requiring exemption of non-full-time residents from school accommodations (dealing with children with arguably two "residences," under joint physical custody arrangement between their divorced parents).

. . . interests and activities" in rare boundary line cases similar to the present case;[6] (3) the Connecticut cases addressing residence in the context of school attendance strongly suggest applying the term "residence" in the "ordinary and popular meaning of the word." See *New Haven* v. *Torrington,* 132 Conn. 194, 43 A.2d 455 (1945); *Yale* v. *West Middle School District,* supra, 59 Conn. 491. We find persuasive the plaintiff's arguments challenging the rigidity and arbitrariness of a bright line rule based solely on the physical location of the residence.

We note that the introduction to the Restatement (Second), Conflict of Laws, indicates that the compilation is intended to "tak[e] full account of the enormous change in dominant judicial thought respecting conflicts problems that has taken place in relatively recent years.

---

[6] 1 Restatement (Second), supra, comment (h) provides: "A person's domicil of choice should be in the place to which he is most closely related. In the normal situation, a person's domicil of choice is in the political division where his dwelling place is situated. When the dwelling place is situated upon a dividing line between political divisions, it may be difficult to determine in which of these divisions this domicile is. Usually, the domicile will be in that political division where the major portion of the dwelling place is located, particularly if only an uninhabitable part lies in the other. On rare occasions, however, the preponderant portion of the person's dwelling place may be in one political division, while the bulk of his interests and activities, and also those of his family, are in the other. One such case might be that of a farmer, all of whose tillable land, barn and out-buildings are situated in one political division but the major portion of whose dwelling place is situated in another. A second case may be that of a man who votes and holds public office, attends church, sends his children to school and follows a gainful employment in the political division which contains only a lesser part of his dwelling place. In these cases, it may well be that the person is more closely related to the political division which is the *center of his interests and activities* than to that which contains the major part of his dwelling place. If this is the case, his domicile of choice should be in the former division. When the boundary line cuts the dwelling place in half, or nearly so, primary weight should be given to the interests and activities of the person and his family and the domicil placed in the political division where most of these interests and activities are centered." (Emphasis added.)

The essence of that change has been the jettisoning of a multiplicity of rigid rules in favor of standards of greater flexibility, according sensitivity in judgment to important values that were formerly ignored." 1 Restatement (Second), supra, p. vii (1971).

We conclude that an approach based on the whole constellation of interests including both geography and the community orientation of the plaintiff and his family is congruent with the Connecticut statutory scheme pertaining to education and consistent with relevant Connecticut case law. A fact based "constellation of interests" approach, which takes into account not only the physical property, but the other factors associated with the plaintiff and his family, finds persuasive support, not only in 1 Restatement (Second), supra, comment (h), but also in many well reasoned cases. See *Board of Education of Golf School District No. 67* v. *Regional Board of School Trustees,* 89 Ill. 2d 392, 433 N.E.2d 240 (1982); *Dresner* v. *Regional Board of School Trustees of Kane County,* 150 Ill. App. 3d 765, 501 N.E.2d 983 (1986); *Granfield* v. *Regional Board of School Trustees of Bureau County,* 108 Ill. App. 3d 703, 439 N.E.2d 497 (1982); *Fowler* v. *Clayton School District,* 528 S.W.2d 955, 958 (Mo. App. 1975).

Furthermore, common sense dictates that this approach be followed. The term "residence" is not defined by the relevant statutory scheme. When a term in a statute is undefined, "it is appropriate to consult the common understandings expressed in the law and in dictionaries." *Young* v. *Marx,* 24 Conn. App. 81, 84, 585 A.2d 1253 (1991). Connecticut case law directs us to the ordinary meaning of this term, which has been broadly construed. "[L]egal residence for school purposes does not necessarily mean domicil, but rather a residence in the ordinary and popular meaning of the word . . . the state is interested in having all of its children educated and has framed its school laws

accordingly." *New Haven* v. *Torrington,* supra, 132 Conn. 200; *Yale* v. *West Middle School District,* supra, 59 Conn. 491.

We note that this case arises in a singular factual context. While many of the cases cited by the board as comprising the "majority approach" determine the physical location of the house to be dispositive, we decline to give these decisions like force where the physical location of the house and lot do not accurately and fully reflect the interests and orientation of the Baerst family. The right of public education benefits people, not property. By far, the important constellation of interests of the Baerst family is with New Canaan. The state board of education has promulgated residency guidelines to determine residency for purposes of public school attendance. These guidelines support an approach that takes into account multiple factors. These factors include the various recreational "affiliations" that a student may have, such as membership in scouts, as well as the town issuance of a library card and the address listed on a motor vehicle operator's license. See September 1988 Residency Guidelines. No statute or case mandates that the geographical factor solely be dispositive.

In determining this issue of first impression, we adopt the position that, under these specific circumstances, the child's right to public education should be viewed in the context of the community with which the family is associated. Proper guidance may be found in a line of cases in which families have sought detachment of their property from one school district because the "natural community of interests" of their children is in the adjoining district. See *Dresner* v. *Regional Board of School Trustees of Kane County,* supra, 150 Ill. App. 3d 765. In *Dresner,* the court relied on the 1982 decision in *Board of Education of Golf School District No.*

*67* v. *Regional Board of School Trustees,* supra, 89 Ill. 2d 392, in which the "whole child concept" was announced. "The [whole child concept] recognizes that extracurricular participation in social, religious and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement. . . . If a child attends school in his natural community it enhances not only his educational opportunity but encourages his participation in social and other extracurricular activities . . . ." Id., 397–98. Later that same year, the Illinois Appellate Court granted a petition for annexation on a finding that "[t]he record clearly shows that all social, recreation, and business associations for the children and parents [lie in the district sought]." *Granfield* v. *Regional Board of School Trustees of Bureau County,* supra, 108 Ill. App. 3d 706.

In a case factually similar to this case, the Missouri Court of Appeals properly emphasized a broad range of factors in determining residence for purposes of school attendance. In that case, in which the plaintiff's house was on the border between two Missouri counties, the court followed the instruction of 1 Restatement (Second), supra, comment (h), which determines residence to be in that district in which the "bulk of [the family's] interests" lie. In applying that test, the Missouri Court of Appeals looked to "activity" and "interest" factors such as church attendance, banking, voting, mailing address, business and employment and "their social and recreational activities." *Fowler* v. *Clayton School District,* supra, 528 S.W.2d 958.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.