[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff board of education of the town of Cheshire appeals a decision of the defendant state board of education determining that two children, Amber Shaw and Ashlee Shaw, are entitled to be educated in the Cheshire school system as of the beginning of the 1993/1994 school year. The state board's decision reversed the earlier decision of Cheshire that held that the children were not residents of that town and therefore not entitled to be educated there. The state board acted pursuant to General Statutes § CT Page 1143110-186. Cheshire appeals pursuant to § 4-183. The court finds in favor of the plaintiff board of education of Cheshire.
The facts essential to the court's decision are not in dispute and all are fully reflected in the record of the administrative proceedings. The Shaw children live with their mother, defendant Cheryl Shaw, in a house that is entirely within the town of Wallingford, which is also a defendant in this appeal. Property taxes are paid only to Wallingford. The house is located very near the boundary of the two towns, however, and the post office address during all relevant times has been 1151 Wallingford Road, Cheshire. The owner of the house also owns adjoining vacant land that is within the town of Cheshire, and taxes on that parcel are paid to Cheshire.
In September 1993, the children enrolled in the Cheshire school. Later that year, however, Cheshire determined that since the house they lived in was entirely in Wallingford, they were not eligible to remain in the Cheshire system. Defendant Cheryl Shaw and the children appealed that decision to the state board of education pursuant to General Statutes § 10-186(b)(2). In accordance with that statute, the children were allowed to remain in the Cheshire school while their appeal was pending.
The defendant state board of education conducted an evidentiary hearing in accordance with § 10-186(b)(2) and rendered its final decision on June 30, 1994. The board found as fact that the children indeed lived in a house that was entirely within the town of Wallingford. The board made numerous other findings of fact, however, concerning the connections the children had to the town of Cheshire. After reciting the variety of social and community activities in which the children engaged exclusively in Cheshire, the board found that the "natural community of the Shaw children is Cheshire." It found that removal of the children from the Cheshire school would be "disruptive to their development." Based on these findings and especially in reliance on the Appellate Court's decision inBaerst v. State Board of Education, 34 Conn. App. 567 (1994), the board concluded that "the Shaw family resides in Cheshire for the purpose of school attendance." Accordingly, the board sustained the Shaws' appeal and ordered Cheshire to provide them free public education.
Before turning to the merits of Cheshire's appeal to this court, the court must consider whether the issues are moot in CT Page 11432 view of the provisions of Public Act 95-130, which became effective on July 1, 1995, subsequent to the board's decision and while this appeal was pending. The defendants argue that the Act essentially overrules the Baerst decision and dictates that the children must attend school in Wallingford after the effective date. Therefore, they argue, Cheshire will have obtained from the Act all that it could receive from the court's ruling, and there is, therefore, no reason for the court to indulge an academic discussion concerning the rights of the parties in the past.
The defendants' argument's concerning mootness overlook the provisions of General Statutes § 10-186(b)(4), which Cheshire cites in opposition. That statute permits a town that has provided education to a child who is later determined to be a resident of another town to seek tuition reimbursement from the town of actual residence. If Cheshire were to prevail in this appeal on the basis that the board was in error in determining that the children were Cheshire residents during the past two school years, it argues that it could seek reimbursement from Wallingford. Therefore, Cheshire argues, the issue of the children's residency during those years is very much alive, notwithstanding it may have been settled for the future.
The court agrees with Cheshire that some practical relief could flow to the town as a result of the court's ruling on the merits of its appeal. The court declines to dismiss the appeal on the basis of mootness, therefore.
The plaintiff advances several arguments in support of its appeal. The theme underlying all of them is that the board wrongly determined that the children were "residents" of Cheshire as that term is used in the public statutes relating to school attendance, General Statutes § 10-184 et seq. Specifically, Cheshire argues that the board wrongly interpreted the court's holding in Baerst v. State Board of Education, supra, to apply to the factual circumstances in this case. The court agrees.
In the Baerst case, the court held that there is no "bright line rule based solely on the physical location of residence." Id., 34 Conn. App. 575. Instead, the Appellate Court held that a "fact based `constellation of interests' approach, which takes into account not only the physical property, but the other factors associated with the (schoolchild) and his family" was the appropriate method for determining residency for purposes of public school attendance. Id., 34 Conn. App. 576. These other CT Page 11433 factors may consist of social, recreational, business, and religious associations and activities; adding up to what the court called the child's "natural community."
Unquestionably, the doctrine of the Baerst decision was completely viable at the time the state board of education heard the Shaws' appeal, prior to the enactment of Public Act 95-130. This court concludes, however, that the facts in the present case differ significantly from those in the Baerst case, rendering that case inapplicable as precedent for the board's decision.
In the Baerst case, the physical residence of the schoolchild was not wholly in one town, as it is in this case. Rather, the boundary line between the competing towns, New Canaan and Norwalk, ran right through the house. This fact, though perhaps not unique in Connecticut, is most certainly unusual and clearly contributed to the court's holding. Thus, the court's initial framing of the issue emphasized that fact: "The principal issue raised by this appeal is whether residency (of) . . . a childwhose home sits astride a boundary line between twomunicipalities should be determined solely by considering the physical location of the dwelling or by taking into account the full constellation of interests related to the communities involved." (Emphasis added.) Baerst v. State Board of Education, supra, 34 Conn. App. 567. Likewise, in enunciating its holding in the case, the court made clear that the plaintiff schoolchild's geographical connection to New Canaan, in addition to the "constellation of interests" centered there, was a factor in its conclusion that New Canaan was the town of residence. Thus, the court held that "that an approach based on the whole constellation of interests including both geography and thecommunity orientation of the plaintiff and his family" provides the proper criteria for determining residency for school attendance purposes. (Emphasis added.) Id., 576.
The Baerst court's inclusion of a definite geographical connection to a town as one of the factors that must be considered in determining residency for school attendance purposes is consistent with Connecticut case law on the subject of residency in general. See Don v. Don, 142 Conn. 309 (1955), defining residency as a person's stated dwelling.
The inclusion of a geographical connection also pays due regard to the basic structure of the state's public education system. As the trial court observed in the Baerst case, that CT Page 11434 "scheme is based on geography, not affinities. Except where regional school districts have been created, school districts are coexistent with municipal boundaries. See 10-220 and 10-240
C.G.S. Each local board of education obtains funding for the schools in its district from the town in which the schools are situated; and such funds are raised in large part by local taxes pursuant to 10-222 C.G.S. School boards are required to file annual reports as to the number of children of compulsory school age "who reside within the jurisdiction of such school district" each year, pursuant to 10-249 C.G.S., another instance of geographical organization." Baerst v. State Board of Education, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV 92 050 88 06 (February 10, 1993, Hodgson,J.). On appeal, the Appellate Court adopted a more flexible rule, but only for the "rare boundary line case." Baerst, supra,36 Conn. App. 575. the Appellate Court did not restructure the entire public education system in the state.
For the reasons set forth above, this court holds that the reasoning of the Appellate Court in the Baerst case is inapplicable to a case such as that presently before the court, where the physical location of the dwelling of the child and the child's family is entirely within one town. In such a case, the court holds that the residence of the child for purposes of public school attendance is in the town where that dwelling is located. Accordingly, the defendant board was in error in determining that the Shaw children's residence for school attendance purposes was Cheshire during the 1993/1994 and 1994/1995 school years. Based on the facts in the record, the town of residence of the children was Wallingford during those years.
The appeal of the plaintiff board of education of Cheshire is sustained.
MALONEY, J.