[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal arises out of a dispute between the plaintiff Riley Energy Systems of Lisbon (RESOL) and the defendant Connecticut Light Power Company (CLP). These parties entered into an Electric Purchase Agreement (EPA) so that CLP would purchase electricity from RESOL's waste to energy facility.[1]
At issue is the date for CLP to begin paying the contract rate for the electricity. Under the terms of the EPA, any payment disputes would be presented to the Department of Public Utility Control (DPUC), also a defendant in this appeal.
On March 13, 1991, the DPUC approved the EPA between the plaintiff and CLP by Decision in Doc. No. 91-01-12. (Return of Record ("ROR") Item X-1.) On June 3, 1996, RESOL filed a petition before the DPUC requesting a declaratory ruling that CLP was required to begin paying for electricity at the contract rate described in § 14 (b) of the EPA as of the In-Service Date of December 19, 1995. (ROR, Item V-1.) CLP filed a response to the petition on June 28, 1996. CLP contended that its obligation to pay the contract rate began on January 26, 1996. (ROR, Item V-2.)
On July 10, 1996, the DPUC issued a decision reopening the proceeding to consider the declaratory ruling requested. (ROR, Item X-2.) On July 16, 1996, the DPUC propounded a single question to CLP, which was answered on July 23, 1996. (ROR, Items VI-1 and VII-1.) On August 25, 1996, RESOL directed forty one interrogatories to CLP. (ROR, Item VI-2.) On September 11, 1996, CLP objected to seventeen of those interrogatories and on September 17 and 20, 1996, CLP answered the remaining interrogatories. (ROR, Items VII-2, 3, 4.) RESOL filed a memorandum regarding CLP's objections. (ROR, Item VII-5.)
A DPUC hearing officer issued a draft ruling on November 4, 1996, in favor of RESOL. (ROR, Item IX-4.) On November 15, 1996, CLP filed exceptions to the draft decision, and RESOL filed a brief in support of the draft decision. (ROR, Items VIII 1, 2.) Oral argument took place on November 25, 1996. On December 31, 1996, the DPUC issued a final declaratory ruling, which was amended on January 8, 1997, rejecting RESOL'S petition and finding that the commercial operation date and in-service date of the facility was January 26, 1996. (ROR, Items X-3, 4.) On February 19, 1997, RESOL filed this appeal.
In this appeal, RESOL claims 1) there is no substantial evidence to support the DPUC's conclusion; 2) the DPUC violated CT Page 10991 RESOL's due process rights under the 14th Amendment of the U.S. Constitution and Art. I, § 8 of the Connecticut Constitution; 3) the DPUC violated its own procedures; and 4) the DPUC acted arbitrarily and capriciously. The answers and the record were filed; briefs were filed, and oral argument took place on September 11, 1997. During the pendency of the appeal and prior to the date of the hearing, RESOL filed an application for leave to present additional evidence before the DPUC under General Statutes § 4-183 (h). The defendants DPUC and CLP filed memoranda in opposition.
This court's review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is "appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions." (Citations omitted.) Connecticut Light Power v.Dept. of Public Utilities Control, 219 Conn. 51, 57,591 A.2d 1231 (1991); Woodbury Water Co. v. Public Utilities Commission,174 Conn. 258, 260, 386 A.2d 232 (1978). "Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency,226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. State Boardof Labor Relations, 216 Conn. 253, 262, 579 A.2d 505 (1990);Baerst v. State Board of Education, 34 Conn. App. 567, 571,642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v. Commissionerof Social Services, 38 Conn. App. 522, 525-26, cert. denied,235 Conn. 906 (1995).
Under General Statutes § 4-176,
 (a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency.
Pursuant to subsection (h) of § 4-176, the DPUC issued a ruling containing the facts and reasons for its conclusions. It rejected RESOL's argument that CLP requested a legal opinion letter in bad faith, and it interpreted the EPA to support CLP's CT Page 10992 position. The provisions of the EPA that are the subject of RESOL's petition are §§ 12 (a) and 14 (b):
12. PREREQUISITES FOR PURCHASES
 (a) Buyer's obligation to begin the purchase of electricity from Seller at the rates specified in Section (b) is contingent upon the occurrence of all of the following:
(1) Seller's submittal of the following:
* * *
 (viii) Evidence that Seller has obtained all permits, licenses, approvals and other governmental authorizations needed to construct and operate the Facility unless those regulatory approvals are not required by law at the In-Service Date or, in the case of temporary permits, Seller demonstrates that permanent permits of that type are reasonably likely to be obtained in due course.
* * *
 (b) Seller may submit the information, required under subsection (a) (1) (i) through (iii) and (a) (1) (v) through (viii) no later that sixty (60) days before the Facility's Financial Closing. However, such information must be reasonably complete and must evidence completion of significant portions of the development of the Site or Facility. Seller shall submit the information required under subsection (a) (1) (iv) (aa) and (bb) no later than sixty (60) days prior to the In-Service Date. Buyer shall within sixty (60) days of receipt, review and either acknowledge its satisfaction therewith or provide written objections to said materials.
(ROR, Item I-1, ex. A.)
The following facts are not in dispute in this appeal. RESOL CT Page 10993 is operating a waste to energy facility in Lisbon, Connecticut. Under the EPA between the parties, CLP is to pay RESOL for approximately 14.5 megawatts of electricity generated annually from the facility. RESOL began delivering electricity to CLP on October 19, 1995. On December 3, 1995, through its plant manager, James Taylor, RESOL submitted a Permit Plan to CLP. That submission read as follows:
As per request, here are copies of:
 • The Detailed Permit Plan. This is a book with every permit that is required for the facility's construction and/or operation. The only permits not yet obtained are the Final Permits to Operate from the Connecticut Department of Environmental Protection (CTDEP). These permits won't be issued until sometime next year.
 • The Amended Restated Service Agreement
between ECRRA RESOL.
 Please give me a call if you have any questions or concerns with these documents. Thank you!
(ROR, Item V-1, ex. 2.)
On or about December 18, 1995, CLP verbally requested an opinion of counsel regarding the requisite permits. On January 26, 1996, RESOL's counsel provided CLP with a written opinion that began as follows:
 We represent Wheelabrator Technologies Inc., a Delaware corporation ("WTI"), and are furnishing this opinion in response to your request pursuant to Sections 12 (a) (1) (viii) and 36 of that certain Electricity Purchase Agreement dated as of June 3, 1991. . . .
(ROR, Item V-1, ex. 4.)[2]. CLP then sent RESOL a letter on February 14, 1996, confirming December 19, 1995 as the Commercial Operation Date and the In-Service Date; and confirming January 26, 1996 as the date for CLP to begin paying the contract rate for electricity. (ROR, Item V-I, ex. 5.) CT Page 10994
Before the DPUC, the plaintiff argued that CLP's right to request a legal opinion letter was used as a pretext to delay paying RESOL at the contract rate. (ROR, Item XI, p. 4.) CLP argued that it had a contractual right to request evidence that satisfied CLP that RESOL had met all prerequisites for purchasing electricity at the contract rate.
In rejecting the plaintiff's petition, the DPUC found that:
 The Plant Manager's letter failed to make any representation at all as to the reasonable likelihood that temporary DEP permits were, in due course, to be replaced with permanent permits. Based on the lack of certified evidence as to the finalization of the permitting process and no evidence regarding the issue of temporary permits. CLP's request for additional information was reasonable. . . .
 . . . It was within CLP's right, under the Agreement, to seek confirmation from a duly qualified source. The request for confirmation, at the time it was made, was reasonable, and within the terms of the Agreement.
(ROR, Item X-3, pp. 4, 5.)
The plaintiff first claims that there was not substantial evidence in the record to support the DPUC's decision. In light of the language of the EPA in § 12 (a) (1) (viii) requiring RESOL to "demonstrate that permanent permits of that type are reasonably likely to be obtained in due course" as compared with the language of the plant manager's December 3, 1995 letter, there is substantial evidence to support the DPUC's finding. As noted by the DPUC, the terms of the EPA support the finding that CLP could request further documentation to ensure compliance with § 12 (a) (1) (viii).
In furtherance of the lack of substantial evidence argument, the plaintiff reads § 12 (b) of the EPA as requiring RESOL to provide the permit information sixty days before the financial closing of the facility. Since the closing took place "some years before the plant went into operation," then CLP must have had the permit information well before December 1995. (Plaintiff's CT Page 10995 brief, p. 13). The court reads § 12 (b) differently. That section does not require, but does allow RESOL to submit the information prior to the closing.[3] Further, RESOL claims that CLP's response to the single interrogatory propounded by the DPUC supports its position. In that response CLP states that it is not aware of any trash-to-energy facility that has received a temporary permit and was denied a subsequent permanent permit. In light of the clear language of § 12 (a) (1) (viii) of the EPA requiring an assurance if requested, this response is not relevant. There is nothing in the record to show that CLP had in fact received the permit information prior to December 1995 in compliance with the terms of the EPA.
The plaintiff also argues that the DPUC violated its due process rights by deciding the dispute without an evidentiary hearing. It cites the case of Singh v. Commissioner of thePublic Health and Addiction Services, 15 Conn.L.Rptr. 513
(1996). That judgment remanding the matter to the agency for a hearing was reversed with judgment directed for the defendant inSingh v. Dept. of Public Health Addiction Services,45 Conn. App. 83, cert. denied, 241 Conn. 925 (1997). "Hearings before administrative agencies, . . . although informal and conducted without regard to the strict rules of evidence, must be conducted so as not to violate the fundamental rules of natural justice." (Citations and internal quotation marks omitted.) Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 536 (1987). Under General Statutes § 4-176, there is no requirement that the DPUC hold an evidentiary hearing on a petition for a declaratory ruling. Here, nowhere in the record does the plaintiff request such a hearing.[4] The plaintiff had the opportunity to present evidence in written form in support of its petition. As noted in the final decision, both parties were given the opportunity to brief the issues, to file written exceptions to the draft ruling and to present oral argument. The court finds no violation of the plaintiff's rights to due process.
The plaintiff next claims that the DPUC violated its own procedures in failing to allow RESOL to conduct discovery. A review of the Record indicates that RESOL was allowed to conduct discovery. Of the forty interrogatories propounded to CLP, twenty-three were answered. Accordingly, even under the case cited by the plaintiff, the DPUC did not violate its procedures as to discovery. Office of Consumer Counsel v. DPUC,13 Conn. L. Rptr. 49 (1995). CT Page 10996
The court finds that the DPUC's decision denying the plaintiff's petition is supported by the substantial evidence in the record. The court further finds that the DPUC did not violate the plaintiff's right to due process and did not violate its own procedures.
Finally, the plaintiff claims that in its decision the DPUC arbitrarily and capriciously changed the In-Service Date for all purposes and beyond the issues framed in its petition. The parties agree that the In-Service Date should not have been changed for all purposes, but they cannot agree on whether the DPUC's final ruling did so. The defendant DPUC states that the decision relates "solely to the question of when CLP was required to begin payment at the contract rate." (Brief of Defendant DPUC, p. 19.) The defendant CLP similarly does not read the decision as changing the In-Service Date for any other purpose than payment. (Brief of Defendant CLP, p. 22, n. 5.) Page 4 of the final decision sets forth CLP's position as believing that "the in-service date of the Facility for paymentpurposes under Section 14 (b) of the Agreement should be January 26, 1996." (Emphasis added.) (ROR, Item X-3, p. 4.) Nevertheless, the conclusion of the final decision clearly states:
 The Department finds the commercial operation date and the In-Service Date of the Facility to be January 26, 1996.
(ROR, Item X-3, p. 5.)
Clearly, this finding is not limited to payment purposes only. It effects a change not sought by any party, and there is no evidence in the record to support this finding. Accordingly, the appeal is sustained in part and the matter remanded to the DPUC to correct the above ultimate finding to state: "The In-Service date of the Facility for payment purposes under § 14 (b) of the Agreement is January 26, 1996." See General Statutes §4-183 (k).
The court denies the plaintiffs' application for leave to present additional evidence. Under General Statutes § 4-183
(h), the court may order that additional evidence be taken before the agency if "it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for [the] failure to present it in the proceeding before the agency." Here, the plaintiff seeks to present evidence: CT Page 10997
 1. that CLP had actual knowledge that the large majority of RESOL's permits had been issued more than two years before December 1995, that RESOL updated the list of outstanding permits at least quarterly; and that CLP knew in October 1995 that RESOL received its operating permit.
 2. that CLP certified in 1993 that it knew of no breaches by RESOL or any other party of the Power contract;
 3. of the extent to which CLP has required legal opinions from other Sellers of electricity;
 4. that CLP established the In-Service Date of December 19, 1995, and of the consequences of the DPUC's change of that date to January 26, 1996.
As to ¶¶ 1, 2 and 3, the court finds that the evidence sought is not material. As noted earlier in this decision, the dispute is one of performance under this contract in December 1995. Additionally, as to ¶ 1, as noted earlier in this decision, § 12 (b) does not require RESOL to present permit evidence prior to the Financial Closing. Accordingly, the request is not material. In addition, the court cannot find that there are good reasons why this evidence was not presented during the proceeding. As to ¶ 4, in light of this court's order remanding this issue to the DPUC with direction, this request is moot.
The court remands the case to the DPUC and orders it to correct the finding in accordance with this decision. On all other issues, the court finds for the defendants.
DiPentima, J.