[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Angel Martinez appeals a decision of the defendant commissioner of the department of mental retardation (commissioner) finding the plaintiff ineligible for services of the department of mental retardation. Under General Statutes § 17a-210, the commissioner's responsibilities include planning and developing complete, comprehensive and integrated statewide services for persons with mental retardation. A hearing was held under subsection (d) of General Statutes § 17a-210
after the department of mental retardation north central region director found the plaintiff ineligible for department services. After the hearing, the commissioner affirmed the decision of ineligibility. For the reasons stated below, the court finds in favor of the plaintiff.
Martinez is an eighteen year old Spanish speaking man who is a resident of Connecticut. Prior to 1990, Martinez lived in Puerto Rico with his father; in 1990, he moved to Connecticut to live with his mother. From 1991 to 1997, Martinez underwent six psychological evaluations. In early 1997, the plaintiff's CT Page 5065 advocate, Jose Centeno of the Office of Protection and Advocacy for Persons with Disabilities (OPA), requested that the department of mental retardation north central regional office determine the plaintiff's eligibility for the department's services. On February 10, 1997, the regional director of the north central office notified the plaintiff that he had been found ineligible for the department's services. On March 20, 1997, the plaintiff requested a hearing claiming that he was eligible for the department's services.
On April 17, 1997, the hearing took place before a hearing officer. At the hearing the plaintiff's evidence included the testimony of Diane Badillo Martinez, a neuropsychologist; five psychological evaluation reports from June 14, 1995; September 20, 1995; April 1, 1996; December 3, 1996; and April 15, 1997; a summary of psychological evaluations; an excerpt from a tests and assessment techniques treatise; and two pages of drawings by the plaintiff. The department presented the testimony of James Connolly, consulting psychologist for the department's north central region; an October 23, 1991 special education department psychologist's assessment; an October, 1995 hospital discharge summary; an excerpt from a school psychology treatise and a special education review and planning form. On May 1, 1997, the hearing officer's proposed decision was sent to the parties. The parties filed written comments to the decision. The commissioner issued a final decision concurring with the proposed decision on June 10, 1997, and finding the plaintiff ineligible for the department's services.
In the proposed decision the hearing officer found that the plaintiff experienced educational deprivation during his developmental years, has a history of social deprivation, experienced the trauma of physical and emotional abuse during childhood, has a history of distorting reality and disorganized thinking, had delayed development, shows deficits in adaptive behavior and has been arrested four times since April, 1995. The hearing officer further found that the psychological evaluations performed on the plaintiff show wide discrepancies in test score results. The hearing officer concluded:
 It is the decision of this hearing officer that Angel Martinezis not eligible for DMR services. This decision is based on the eligibility criteria requiring significant sub average intellectual functioning defined as two standard deviations below the mean or below an IQ of 70. Two of the CT Page 5066 tests that show Angel achieving an IQ of below 70 (6/14/95, 12/3/96) translated AD HOC into Spanish and are no longer standardized. The third test that showed a score of under 70 (4/15/97) is not read as an IQ test and was performed after his eighteenth birthday.
 The remaining three psychological evaluations (10/23/91, 9/20/95, 4/1/96) show Angel performing at least in the low average range of intelligence. While there are also issues with these evaluations, there is no clear evidence that would support totally disregarding them. It is further noted that although Angel reportedly distorts reality, has disorganized thinking, a language disability, and a history of educational and social deprivation, he was still able to perform within at least the low average range of intelligence on these three psychological evaluations.
 This hearing officer did not find sufficient evidence to find Angel Martinez eligible for DMR services.
(Return of Record, ROR, R-7, p. 4).
In this appeal, the plaintiff claims that the commissioner's decision is clearly erroneous based upon the reliable, probative and substantial evidence in the record, that the method of focusing solely upon the mathematical IQ score to assess mental retardation discriminates against Hispanic persons and that the findings of fact are incorrect.
A basic principle of administrative law is that the scope of the court's review is very limited.
 Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public Utilities Control, 219 Conn. 51, 57, 591 A.2d 1231
(1991); Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258, 260, 386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. State Board of Labor Relations, 226 Conn. 253, 262, 579 A.2d 505 (1990); Baerst v.CT Page 5067 State Board of Education, 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994).
(Internal quotation marks omitted.) Cabasquini v. Commissioner ofSocial Services, 38 Conn. App. 522-26, cert. denied, 235 Conn. 906
(1995).
General Statutes § 4-183 (j) provides in pertinent part:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Pursuant to General Statutes § 17a-212, the commissioner has adopted regulations establishing the criteria for determining eligibility for department services. Subsection (b) of Connecticut State Agency Regulation § 17a-212-2 sets forth that criteria:
A person who is
 (1) a resident of the State of Connecticut; and (2) has mental retardation is eligible for services of the department.
For the purposes of eligibility determination, mental retardation is defined in
General Statutes § 1-1g.
 (a) For the purposes of sections 4a-60, 17a-274, 17a-281, 38a-816, 45a-668 to 45a-684, inclusive, and section 46a-51, mental retardation means a significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period.
CT Page 5068
See Conn. State Agency Reg. 17a-212-1(i). "Significantly subaverage general intellectual functioning" is defined in General Statutes § 1-1g(b):
 "general intellectual functioning" means the results obtained by assessment with one or more of the individually administered general intelligence tests developed for that purpose and standardized on a significantly adequate population and administered by a person or persons formally trained in test administration; "significantly subaverage" means an intelligence quotient more than two standard deviations below the mean for the test.
In the decision, the hearing officer found that Martinez did not meet this statutory definition, and specifically based this determination "on the eligibility criteria requiring significant subaverage intellectual functioning defined as two standard deviations below the mean or below an IQ of 70." (ROR, R-7, p. 4.)
The court agrees with the plaintiff that the hearing officer's finding of fact as to the October 23, 1991 evaluation is clearly erroneous in view of the record as a whole. In addition to the conclusion that the October 23, 1991 evaluation shows Angel performing "at least in the low average range of intelligence," the hearing officer also found:
 The 10/23/91 evaluation reports that Angel achieved `at least low average ability. . . .;' however no test results were included.
(ROR, R-7, p. 3.) Further, the hearing officer's list of test score results notes the IQ score on all six tests except the October 23. 1991 evaluation. Again, the result is listed as "low average ability." (ROR, R-7, p. 2.) The plaintiff argues that the full report does not support these findings and conclusions.
While the full report of the October 23, 1991 evaluation is not part of the record and the plaintiff did not move to supplement the record under General Statutes § 4-183 (h), there is evidence in the record of the test scores contained in that evaluation. In the December 3, 1996 psychological evaluation report by Nelson E. Rivera, Ph.D., the following appears:
Angel was initially evaluated by Priscilla Vargas, school CT Page 5069 psychologist at Hartford Public School on October 23, 1991 using the WISC-R Spanish. Edition. He was found to have a full scale IQ score of 61 which placed him in the mildly mentally retarded range.
This evidence reveals the existence of test scores for the October 23, 1991 evaluation. Thus, the finding that no test results were available from the October 23, 1991 evaluation is not supported by the record. Property Group. Inc. v. Planning andZoning Commission, 226 Conn. 684, 697 (1993) ("the evidence . . . to support any such reason must be substantial. . . ."). Because the hearing officer's conclusion that Martinez is ineligible is explicitly based upon "significant subaverage intellectual functioning defined as two standard deviations below the mean or below an IQ of 70," the plaintiff has suffered material prejudice as a result of the hearing officer's finding regarding the October 23, 1991 evaluation.
The hearing officer specifically found that three evaluations (June 14, 1995; December 3, 1996 and April 15, 1997) resulted in a score below 70, and that three evaluations (October 23, 1991; September 20, 1995 and April 1, 1996) resulted in a showing of "low average range of intelligence." The September 20, 1995, and April 1, 1996 evaluations showed scores above 70. There is also an explicit finding that the "psychological evaluations show wide discrepancies in test score results" and that all these results are "at issue." Thus, the existence of a test score that is below 70 from the October 23, 1991 evaluation may affect the commissioner's determination of eligibility.
This court does not intend to usurp the role of the commissioner. It will not attempt to determine the import of the October 23, 1991 test score. Compare New Haven v. PublicUtilities Commission, 165 Conn. 687, 716-717 (1974) (the court struck a finding unsupported by the record but found no effect in the result by the commission). It may be that when the department reviews the entire October 23, 1991 evaluation its determination will not change. Nevertheless, because the IQ scores were so obviously significant to the hearing officer, the omission of the October 23, 1991 test score may affect the department's conclusion. The department should review the entire October 23, 1991 evaluation report in its reconsideration.
In light of the court's decision to remand, the court need only address one of the two remaining claims. According to the CT Page 5070 plaintiff, the method of focusing solely upon mathematical IQ scores to assess retardation discriminates against Hispanics. Under General Statutes § 4-183(j), the plaintiff must show he was prejudiced by this alleged constitutional violation. The record does not demonstrate that the plaintiff was prejudiced by the method of assessing retardation. In the final decision the commissioner notes the following:
 I am cognizant of the issues raised by the petitioner, specifically the alleged upward bias of certain standardized testing of intellectual functioning as it relates to Spanish-speaking persons. I also believe these issues were duly considered by the hearing officer.
* * *
 On EIWA (WAIS Spanish) tests administered on September 20, 1995 and April 1, 1996 Angel Martinez achieved Full Scale IQ scores of 96 and 89, respectively. Even assuming the overestimation biases of 10 to 15 points stated by the petitioner's expert, Mr. Martinez scoring on these tests is 26 and 19 points, respectively, above the range of mental retardation on standardized intellectual testing.
(ROR, R-2, p. 1.) Because the plaintiff cannot show prejudice based upon the existing record, the court rejects this claim.
The court sustains the appeal and remands the matter to the commissioner for further proceedings to correct the finding of fact as to the October 23, 1991 evaluation and to reconsider its decision as necessary in accordance with this decision.
DiPentima, J.