[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Mystic Transport Services (Mystic) appeals from a decision of the defendant department of insurance (department) allowing the defendant Aetna Casualty and Surety Company (Aetna) to increase Mystic's insurance premium by $152,849. This decision upheld the approval of an increase by the defendant Connecticut Automobile Insurance Assigned Risk Plan (risk plan). The department acted pursuant to General Statutes § 38a-329[1], and the plaintiff appeals pursuant to General Statutes §§ 38a-19 (c) and 4-183(c). For the reasons set forth below, the court finds the issues in favor of the defendants.
The following facts are undisputed. Mystic Transportation, Inc. was licensed as a general commodities broker by the Interstate commerce Commission (ICC) under docket number MC219348 on July 11, 1989. In this role, Mystic arranges transportation of newspaper supplements to newspapers nationwide but does not itself transport the supplements. During 1993, the principals of Mystic decided to expand the scope of its transportation services by adding contract carrier services, i.e., Mystic would transport newspaper supplements with its own leased trucks. Thus, Mystic Transport Services, Inc. became licensed by the ICC under docket number MC219348 as a contract carrier on December 6, 1993.[2]
By application dated December 10, 1993, Mystic applied for public liability insurance through the risk plan, and the application was assigned to Aetna. Aetna issued a trucker's policy for the period December 30, 1993, to December 30, 1994, and on December 27, 1993, made the requisite ICC filing of proof of insurance. In May 1994, Aetna performed an audit of Mystic's books, and as a result of that audit, demanded an additional premium of $1,959,107. Mystic objected, and a second audit was conducted with the same results. Mystic then appealed the demand for additional premium to the risk plan. After a CT Page 6564 hearing, on November 7, 1994, the risk plan denied Mystic's appeal and declined "to relieve Mystic of its obligation to pay premium calculated pursuant to Rule 53 of the Connecticut Plan." (Return of Record (ROR), Ex. 3.) The plaintiff then appealed the risk plan's decision to the department.
The department held hearings on November 6 and 7, 1995, and, by agreement of the parties, the proceedings were suspended in order for Aetna to perform a new audit of Mystic's records to attempt a narrowing of the issues or a resolution of the dispute. The Ludit took place on May 8 and 9, 1996, and as a result, Aetna replaced its $1,959,107 demand with a $152,849 demand for additional premium. The hearings before the department continued on January 7, 1997, and concluded on January 8, 1997. On May 15, 1997, the hearing officer filed his recommended memorandum of decision, and on May 24, 1997, the deputy insurance commissioner adopted his findings and recommendations and determined:
 1. Aetna's demand for additional premium is supported by the terms of the policy.
 2. Aetna's demand for additional premium is supported by applicable Assigned Risk Plan rules or rates approved for use in Connecticut.
 3. The additional premium of $152,849 (Tr. 1997 p. 10) is in compliance with the provisions of CGS § 38a-663 to 38a-681
governing Personal and Commercial Risk Insurance Rating Practices.
(ROR, Ex. A, Order.) Further facts are set forth as needed.
In this appeal, the plaintiff argues (1) that the hearing officer failed to include findings of fact and conclusions of law necessary to its decision in violation of General Statutes §4-180 (c) and (2) that as to the two issues remaining after the 1996 audit, the hearing officer's decision is not supported by the substantial evidence in the record or by the applicable law.
A basic principle of administrative law is that the scope of the court's review is very limited.
Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial 'rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public Utilities Control, 219 Conn. 51, 57 (1991); Woodbury WaterCT Page 6565 Co. v. Public Utilities Commission, 174 Conn. 258, 260 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587 (1993); Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262 (1990); Baerst v. State Board of Education, 34 Conn. App. 567, 571, cert. denied, 230 Conn. 915 (1994).
(Internal quotation marks omitted.) Cabasquini v. Commissionerof Social Services, 38 Conn. App. 522, 525-26, cert. denied,235 Conn. 906 (1995).
General Statutes § 4-183 (j) in part provides:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
As to questions of law, our Supreme Court has recently stated that the deferential standard does not apply to a court's review of an "agency's construction of a statute, which is a pure question of law, particularly when the question has not been subjected to prior judicial review."Connecticut Light Power Co. v. Texas-Ohio Power, Inc., 243 Conn. 635,644 (1998). Otherwise, deference is accorded to the agency's construction of the statute it is empowered to enforce by applying subsection (6) of General Statutes § 4-183 (j). Id., 642.
Mystic's initial claim in its appeal to the department from the risk plan's decision requiring Mystic to pay Aetna the additional premium of $1,959,017 was threefold:
1. All premium due under the Aetna policy is to be based exclusively on transportation services directly provided by Mystic to the public in its capacity as an ICC permitted contract carrier under ICC permit no. MC219348; CT Page 6566
 2. Aetna's demand for additional premium is improperly based upon transportation services arranged by mystic in its capacity as a property broker under ICC license no. MC219348; and
 3. Aetna's demand for additional premium is not supported by the policy terms or applicable Aetna or plan rules or rates and violates Aetna's obligations as a plan member and as an insurer as set forth under Connecticut general statutes.
(ROR, Ex. 2, p. 4.) After the parties attempted a resolution of the issues during the year long suspension of the proceedings before the department, these issues were again before the department for resolution upon resumption of the proceedings in January 1997. (ROR, January 7, 1997 tr., pp. 10-11.) While Aetna reduced its demand for additional premium to $152,849, Mystic continued to argue throughout the proceedings that it owed no additional premium.
The hearing officer resolved the first two issues as follows:
 In considering the appeal issues previously identified, it is the undersigned's opinion that the compromise procedure which was agreed to by the parties resolves issues number one and two in that the four categories of transportation establish an alternate basis for determining premium. The compromise additional premium of $152,849 (Tr. 1997 p. 10) is not based exclusively on the transportation services directly provided by Mystic to the public as an ICC-permitted contract carrier nor is Aetna's demand for additional premium improperly based on transportation services arranged by Mystic as a property broker. It is a compromise based on Aetna's "efforts to adequately understand and assess the operations of Mystic transport on terms of their policy exposure."
(ROR, Ex. A, memorandum of decision, p. 4.) The substantial evidence in the record clearly supports this conclusion by the hearing officer. It is the resolution of the third issue before the department that is the focus of this appeal.
The plaintiff claims that the hearing officer did not comply with General Statutes § 4-180(c). That statute provides:
A final decision in a contested case shall be in writing or orally stated on the record and, if adverse to a party, shall include the agency's findings of fact and conclusions of law necessary to its decision. Findings of fact shall be based exclusively on the evidence CT Page 6567 in the record and on matters noticed.
Relying on § 4-180(c) and Wilson Point Property Owners Association v.Connecticut Light Power Co., 145 Conn. 243, 252 (1959), the plaintiff specifically argues that the hearing officer failed to make the necessary findings as to situations two and four of the situations agreed to by the parties during the suspension of proceedings.[3] The court disagrees.
The hearing officer made the following finding:
 6. During the period that Aetna insured Mystic, Bills of Lading involving the transportation of goods, materials or commodities listed "Mystic Transport Services" or "Mystic Transportation" or "Mystic" on the line above (Name of Carrier) or (Carrier) (Tr. 1995, exhibit 18) (Tr. 1995 pp. 38-40) (Tr. 1997, exhibit 48).
(ROR, Ex. A., p. 3.) Additionally the hearing officer found that "Aetna was exposed to liability based on Mystic's business operation," and that "Mystic's expert testified that in his opinion, Aetna had an excess exposure as opposed to a primary liability exposure." (ROR, Ex. A, pp. 4, 5.) The hearing officer then concluded that the determination of final premium was based on actual exposures based on a premium audit. (ROR, Ex. A, p. 3.) Later, he found that the resulting premium rate in the two situations in CT Page 6568 dispute was "reflective of the excess exposure Mystic presented." (ROR, Ex. A, p. 6.) The hearing officer thus complied with General Statutes § 4-180(c) by including adequate findings and conclusions necessary to the decision.
As to the second claim, the plaintiff argues that the record does not support the conclusion sustaining Aetna's demand for additional premium under the two disputed shipping document situations. It first argues that none of the flawed bills of lading referenced by the auditor to support the existence of exposure under situation two was issued by Mystic. According to the plaintiff, therefore, Aetna could not demand additional premium on the basis of policy exposure because the requirements of situation two are not satisfied. The record, however, contains evidence that supports the finding of exposure under this situation because the bills of lading and invoices show Mystic as a carrier and other documentation indicates Mystic was often in control. (ROR January 1, 1997 tr. p. 242; Ex. 48 Tabs 9-11; Exs. 52A-62L.) Brennan v. Scherman Trucking Co., 540 F.2d 1200, 1204
(4th Cir. 1976) (Pursuant to 49 U.S.C. § 303 (a)(4) "it is not what a corporation does but what it holds itself out to do that determines its status as a common carrier.").
The plaintiff then argues that Aetna could not demand an additional premium for the fourth situation where the commodities being transported are not subject to ICC regulation and therefore do not expose Aetna under its ICC filing. Even if the plaintiff's position is correct as to primary exposure, it does not address the issue of excess exposure found by the hearing officer.
 In the opinion of the undersigned, the rate of $3.35 per $100 of the cost of hire for situation 2 and situation 4 is not excessive, inadequate nor unfairly discriminatory. In comparison to the full exposure rate of $17.71 per $100 of the cost of hire, and resulting premium using the full exposure rate (Tr. January 8, 1997 p. 251 to 264), the $3.35 is reflective of the excess exposure Mystic presented.
(ROR, Ex. A, p. 6.) Since evidence supports this conclusion by the hearing officer, the court does not address the issue of exposure under ICC filing. (ROR, November 6, 1995 tr., pp. 94-95, 124-25); PropertyGroup Inc. v. Planning Zoning Commission, 226 Conn. 684, 697 (1998) ("The action of the commission should be sustained if even one of the stated reasons is sufficient to support it."). CT Page 6569
The court has reviewed the documents and transcripts in the record and finds evidence to support the department's decision.Newtown v. Keeney, 234 Conn. 312, 320 1995) ("The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ."). Under the limited scope of review this court possesses, it will not disturb the conclusions of the hearing officer.
The appeal is dismissed.
DiPentima, J.