[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff AMR Wasfi appeals from a decision of the defendant Connecticut Board of Veterinary Medicine (board) revoking his license to practice veterinary medicine based on charges brought by the Department of Public Health (department) and board acted pursuant to General Statutes §§ 19a-17 and 20-202.The plaintiff appeals pursuant CT Page 11762 to General Statutes § 4-183.
The plaintiff claims that the defendants' decision to revoke his license should be reversed because he was denied due process in several ways during the hearing and thereafter and because the record does not contain substantial evidence to support the board's conclusion that the plaintiff is guilty of unskillfulness under General Statutes § 20-202(2).
On November 19, 1993, the department brought charges against the plaintiff, alleging that his care and treatment of a dog named Molly on November 28, 1992, did not conform to the acceptable standard of care for veterinarians. The statement alleged that the plaintiff 1) misdiagnosed Molly's condition; 2) misinformed and/or misrepresented Molly's condition to her owners; and 3) misrepresented the treatment performed on Molly. The statement further provided that these allegations, if proved, would constitute a violation of General Statutes § 20-202(2). Prior to the filing of the statement of charges, the department held a compliance conference on August 10, 1993 which the plaintiff attended.[1] On December 8, 1993, the department sent a notice of hearing to the plaintiff, indicating that a hearing would be held before a duly authorized panel of the Connecticut Board of Veterinary Medicine in accordance with the Uniform Administrative Procedure Act (UAPA) and § 19a-2a-1 et seq. of the Connecticut State Agency Regulations. The hearing began on April 6, 1994, and evidence concluded on April 27, 1994.
On September 29, 1994, the board notified the plaintiff that it was reopening the administrative record to admit evidence of a length of No. 2 gauge chromic gut and a radiograph showing the anatomical structure of a dog's elbow. (ROR, Vol. I, p. 95). On January 24, 1996, the board heard argument on whether the post hearing correspondence received by the board from a witness should be considered by the board and whether the witness' entire testimony should be stricken. On April 18, 1996, the board issued its final decision which included the following findings:
 3. Allison O'Connell testified, and the Board finds, that the Respondent told her that Molly's leg was fractured. He later told her that he had treated Molly by repairing lacerations of Molly's tendons by putting surgical steel wire through them. (Transcript 4/6/94 pp. 13-15, 27).
 4. The Respondent's treatment notes indicate, and the CT Page 11763 Respondent testified, that he treated Molly by suturing Molly's lacerated tendons using #2 and #1 nylon. (Department Exhibit 4(a); transcript 4/27/94 p. 113). The Board finds, on the basis of its own expertise, that #1 or #2 gauge nylon is too thick to be used effectively to repair the tendons in a dog's legs.
 5. The Respondent's treatment notes further indicate, and the Respondent testified, that the Respondent diagnosed Molly with a "small fracture of proximal extremity of radius". (department Exhibit 4(a); Transcript 4/27/94 p. 73). The notes also state, and the Respondent also testified, that part of the proximal surface of the olecrenon was missing. (Department Exhibit 4(a); Transcript 4/27/94 pp. 78-79).
 7. Dr. Williams reviewed the Respondent's treatment notes, the x-rays of Molly taken by the Respondent (Department Exhibits 5 and 6) and the x-rays taken by Dr. Jeffrey LaCroix, Molly's subsequent treater (Department Exhibits 8 and 9). (Transcript 4/6/94 pp. 57-58, 62). Dr. Williams testified, and the Board finds, that the x-rays revealed no fracture. (Transcript 4/6/94 pp. 58-59, 62-64).
 8. Dr. Williams further testified, and Board finds, that the x-rays revealed that the Respondent had not used surgical steel wire on Molly. (Transcript 4/6/94 pp. 62, 64).
 9. Dr. Williams testified, and the Board finds, that it would be a violation of the standard of care for veterinarians to tell a client that there was a fracture when there was not, and that surgical steel was used when it was not. The Board, on the basis of both its own expertise and Dr. Williams's testimony, further finds that misrepresentation is a violation of the standard of care. (Transcript 4/6/94 pp. 64-66).
 11. Dr. LaCroix reviewed the x-rays taken by the Respondent as well as the x-rays he himself took. (Transcript 4/27/94 p. 21; Department Exhibits 5, 8, and 9). Dr. LaCroix testified, and the Board finds, that the x-rays revealed no fracture. (Transcript 4/27/94 p. 21).
 12. Dr. LaCroix testified, and the Board finds, that he palpated Molly's joint to determine whether there had been any tendon repair and concluded that no repair had been done CT Page 11764 because the joint was fully mobile and flexible with no evidence of scar tissue, other than in the area of the skin. Dr. LaCroix further testified that had a repair been done, the tendon would have been thickened and the sutures in the tendon probably would have been palpable. (Transcript 4/27/94 p. 43). The Board finds such testimony credible, and further finds, based upon its own expertise, that a tendon repair performed with #1 and #2 gauge nylon, which the Respondent testified he had used, would have been easily detectable by palpation.
 13. Dr. LaCroix testified, and the Board finds, that on December 7, 1992, Molly was weight-bearing. The Board finds, based upon its own expertise as well as Dr. LaCroix's testimony (Transcript 4/27/94 pp. 47- 48, 52), that a dog would not be weight-bearing on a limb that had had a tendon repair two weeks earlier. He further testified that it would take approximately four weeks for a lacerated tendon to heal such that an animal could be weight-bearing on it. (Transcript 4/27/94 p. 52).
(ROR, Vol. I, pp. 4-5).
Based upon its findings, the Board concluded,
 The Department sustained its burden of proof with regard to each element of the Statement of Charges. Both Dr. Williams and Dr. LaCroix testified that the x-rays of Molly's leg revealed that there was no fracture. The Board finds their testimony to be credible. In addition, the veterinarians on the Board reviewed the x-rays and, using their own expertise, determined that no fracture was present, and that the proximal surface of the olecrenon was normal. The Board concludes, based upon the foregoing, that there was no fracture and no problem with the olecrenon. However, the Respondent's treatment notes reflect a fracture and that part of the olecrenon was missing. Thus, the Board finds that the Respondent misdiagnosed Molly's condition and therefore is guilty of unskillfulness towards an animal in violation of Section 20-202 (2) of the Connecticut General Statutes.
 Allison O'Connell testified that the Respondent told her that Molly had a fracture and lacerated tendons, and that he had repaired the tendons, and that he had repaired the tendons with surgical steel wire. The Board finds Allison's testimony CT Page 11765 to be credible. Dr. LaCroix testified that he examined Molly and palpated the joint, and, in doing so, did not feel any sutures. Dr. LaCroix also testified that Molly was weight-bearing on that leg two weeks after the accident and that normally it takes about four weeks for a lacerated tendon to heal such that an animal could be weight-bearing. The Board finds Dr. LaCroix's testimony credible and finds his statement regarding the length of time required for a dog's injured tendon to heal to be supported by the Board's own expertise. Based upon the foregoing, the Board finds that the Respondent misinformed Molly's owner regarding Molly's condition and that he misrepresented the treatment he provided to Molly. Therefore, the Board concludes that the Respondent is guilty of unskillfulness towards an animal in violation of Section 20-202 (2) of the Connecticut General Statutes.
(ROR, Vol. I, p. 6). The board ordered the plaintiff's license revoked.
The plaintiff filed his appeal on May 31, 1996 when he obtained a 9 stay of the board's order. He filed his brief on May 27, 1997; the department filed its brief on September 2, 1997; and the plaintiff filed a reply brief on April 9, 1998. The matter was scheduled for oral argument on August 12, 1998 at 100 Washington Street, Hartford and was rescheduled at the plaintiffs' request. The case was to be argued on August 26, 1998 at 2:15 p.m. The plaintiff's counsel notified the court at 2:30 p.m. that he was leaving New Haven to arrive at the court in Hartford. The department's counsel was ready to proceed at 2:15 p.m., and remained in the courthouse until 4:10 p.m. The court opened court at 4:10 p.m., noted that the plaintiff's counsel had not appeared and that no further message had been received from him. The court stated that it would decide the matter without oral argument. The court denied the plaintiff's motion for oral argument and hearing filed the next day.
The plaintiff argues that the record does not contain substantial evidence to support the revocation of his license and that the board exceeded the scope of General Statutes § 20-202 (2) in its decision. The law governing the scope of review by this court determines this issue.
A basic principle of administrative law is that the scope of the court's review is very limited. CT Page 11766
 Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial ` rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public Utilities Control, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury Water Co. v. Public Utilities Commission. 174 Conn. 258, 260, 386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agencies decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. State Board of Labor Relations. 216 Conn. 253, 262, 579 A.2d 505 (1990); Baerst v. State Board of Education. 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994).
(Internal quotation marks omitted.) Cabasquini v.Commissioner of Social Services., 38 Conn. App. 522,525-26, cert. denied, 235 Conn. 906 (1995).
General Statutes § 4-183(j) in part provides:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to facts found and could reasonably and logically follow from such facts . . . New Haven v. Freedom of Information Commission.205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Internal quotation CT Page 11767 marks omitted.) Perkins v. Freedom of Information Commission.228 Conn. 158, 164-65 (1993).
"Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." ((Internal quotation marks omitted.)Redden v. Kozlowski 45 Conn. App. 225, 228 (1997) The plaintiff bears the burden of proof on this issue. "Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Newtown v. Keeney. 234 Conn. 312, 319 (1995).
The court has reviewed the record, including the office notes of the plaintiff as well as the transcript of the proceedings. There is substantial evidence to support the findings of the board as to the misdiagnosis of the dog Molly, the misinformation to Molly's owner of her condition and the misrepresentation of the treatment performed on her.
 "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. Calandro v. Zoning Commission. 176 Conn. 439, 440, 408 A.2d 229
(1979). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Primerica v. Planning Zoning Commission. 211 Conn. 85, 96, 558 A.2d 646 (1989); see also Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40, 525 A.2d 940 (1987).
(Internal quotation marks omitted.) Property Group. Inc. v.Planning Zoning Commission, 226 Conn. 684, 697 (1993).
While the plaintiff testified that he performed the surgery and in a certain manner, the Board was free to discredit some or all of his testimony as to the surgery, the existence of a fracture and what he told the dog's owner. There was testimony from three other witnesses to contradict the plaintiffs version as well as x-rays for the board to review. The plaintiff has not established that the record lacks substantial evidence to support CT Page 11768 the board's findings.
The statute at issue here is § 20-202(2), which is contained within the chapter entitled Veterinary Medicine and reads:
 After notice and opportunity for hearing as provided in the regulations established by the Commissioner of Public Health, said board may take any of the actions set forth in section 19a-17 for any of the following causes: . . . (2) proof that the holder of such license or certificate has become unfit or incompetent or has been guilty of cruelty, unskillfulness or negligence towards animals and birds.
The board which issued the final decision was composed of three veterinarians. Under General Statutes § 20-196b, the board shall "hear and decide matters concerning suspension or revocation of licensure, adjudicate complaints filed against practitioners licensed under the [Veterinary Medicine] chapter and imposes sanctions where appropriate." In the present case, the board concluded that the misdiagnosis, misinformation and misrepressentation regarding Molly's condition and treatment constituted unskillfulness. This court cannot substitute its judgment for that of the of the board.
 We presume that members of a professional health licensing board are competent to decide on the basis of such terms whether certain conduct is in derogation of professional standards. See Jaffe v. State Department of Health, 135 Conn. 339, 349, 64 A.2d 330 (1949) It is also our view that what constitutes "unprofessional conduct" and what renders a professional "unfit" or "incompetent" are to be determined "by those standards which are commonly accepted by those practicing the same profession in the same territory." Leib v. Board of Examiners for Nursing. 177 Conn. 78, 88-89, 411 A.2d 42 (1979), quoting Cherry v. Board or Regents. 289 N.Y. 148, 158, 44 N.E.2d 405 (1942). These standards are part of the ethics of the profession, and every member of the profession should be regarded as an expert with regard to the determination of their meaning.
(Citations omitted.) Altholtz v. Dental Commission4 Conn. App. 307, 314-15 (1985).
The board did not exceed the scope of General Statutes CT Page 11769 § 201-202(2) in revoking the plaintiff's license, and its conclusions were supported by substantial evidence in the record.
Four of the plaintiff's claims on appeal involve the plaintiff's rights of due process before the board. "Hearings before administrative agencies, . . . although informal and conducted without regard to the strict rules of evidence, must be conducted so as not to violate the fundamental rules of natural justice." . . . (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 536 (1987). Further, if the board complied with the UAPA as to these claims raised by the plaintiff, these due process arguments must fail. "[T]he procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." . . . (Citations omitted.) Pet v. Departmentof Health Services. 228 Conn. 651, 661 (1994). These procedural safeguards are set forth in General Statutes §§ 4-177c and 41-178.
 Due process of law requires . . . that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence
(Citations omitted; internal quotation marks omitted.) Huck v.Inland Wetlands Watercourses Agency, supra.
Here, the notice explicitly referred to both the UAPA and Section 19-2a-1 et seq. of the Regulations of Connecticut State Agencies. The pertinent provision of those regulations reads:
 Hearings shall be conducted in accordance with Section 41-177 of the Connecticut General Statutes as amended. The rules of evidence shall be as prescribed in section 4-178 of the Connecticut General Statutes as amended. (Repealed, September 4, 1997.)
The plaintiff claims that the board did not comply with General Statutes 4-178 because the plaintiff had no notice that the board would apply its specialized knowledge as to whether nylon #1 or #2 should have been used. General Statutes § 4-178 provides in pertinent part, CT Page 11770
 (6) notice may be taken of judicially cognizable facts and of generally recognized technical or scientific facts within the agency's specialized knowledge; (7) parties shall be notified in a timely manner of any material noticed, including any agency memoranda or data, and they shall be afforded an opportunity to contest the material so noticed; and (8) the agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence.
While it is the plaintiff's claim that he had no notice in violation of subsection (7), the record does not support this claim. On September 29, 1994, the board sent the parties a notice that it was reopening the record to notice and admit a length of No. 2 gauge chromic gut and a radiograph showing a normal dog's elbow and forearm. (ROR, Vol. I, p. 95). The plaintiff filed an objection to that action. (ROR, Vol. I, p. 86). The board heard argument on April 5, 1995. At that hearing, the board granted the plaintiff's request to accept number two nylon in lieu of number two cat gut. (ROR, Vol. IV, p. 6). In addition, at that time, the plaintiff demonstrated his technique in knotting number 1 and 2 nylon suturing material. (ROR, Vol. IV, pp. 7-11). Thus, there clearly was notice and an opportunity to contest the additional items. The court finds no violation of the plaintiff's due process rights on this ground.[2]
The plaintiff also claims that his due process rights were violated because of an ex parte communication from a witness received by a board member. Citing General Statutes § 4-181
(c), the plaintiff argues that that member should have been disqualified and the witness' entire testimony stricken.[3] The board dealt with this issue as follows:
 After the Board had completed its fact finding and deliberation, but before it issued its Memorandum of Decision, individual members of the Board received, unsolicited, correspondence alluding to the Wasfi matter from Dr. J.A. LaCroix, D.V.M., who had been a witness at the hearing. The Board notified the Department and the Respondent of its receipt of the unsolicited correspondence and supplied both parties with copies of Dr. LaCroix's letters. The Board invited the parties to submit comments or motions regarding this incident. (Board Exhibit 1). Dr. Wasfi filed a paper entitled "Objection to Ex-Parte Communication from Witness to the Board" in which he moved that the Board disregard Dr. CT Page 11771 LaCroix's entire testimony as well as Dr. LaCroix's ex-parte communications. (Board Exhibit 2). The Department filed a written response to Dr. Wasfi's objection. (Board Exhibit 3). At Dr. Wasfi's request, the Board scheduled oral argument regarding Dr. Wasfi's motion. (Board Exhibit 4).
 After hearing the parties' arguments on January 24, 1996, the Board deliberated and voted to grant Dr. Wasfi's motion that the Board disregard the unsolicited correspondence which its members had received from Dr. LaCroix. The Board, however, voted to deny Dr. Wasfi's Motion that it disregard all of Dr. LaCroix's testimony for the reason that the Board had completed its fact finding and deliberation prior to its members' receipt of the letters from Dr. LaCroix, and consequently, the unsolicited communications from Dr. LaCroix had not effect on the Board's decision making.
(ROR, Vol. I, p. 3).
The record shows that upon learning of the ex-parte communication the plaintiff sought to have the entire testimony of Dr. LaCroix disregarded by the board. Because he did not seek to have either the board member or the entire board disqualified, the court cannot grant the plaintiff relief on this ground. InHenderson v. Department of Motor Vehicles. 202 Conn. 453, 460-63
(1987), the Supreme Court found fatal the failure to timely request disqualification of the hearing officer who spoke with a witness just prior to the hearing. "The failure to raise a claim of disqualification with reasonable promptness after learning the ground for such a claim ordinarily constitutes a waiver thereof."Id., 462. The plaintiff here has waived his claim of disqualification. Further, there is no authority for the plaintiffs position that LaCroix's entire testimony should not have been weighed and considered by the board despite the post hearing communication.
The plaintiffs final due process argument is that there was bias on the part of a board member who had a longstanding relationship with the witness LaCroix. The plaintiff alleged in his appeal complaint that he learned that the Board member Ferris Gorra and LaCroix knew each other through veterinary school and "currently maintain a personal relationship." (Complaint dated 5/29/96, ¶ 19). There is nothing in the record below to substantiate the allegation of a personal relationship between Gorra and LaCroix. There was no motion made under § 4-183(i) CT Page 11772 nor any request to 3 present evidence before this court of the alleged bias. The plaintiff appended a November 14, 1997 affidavit to his reply brief dated April 9, 1998, which was signed by Frederick Perachio, a salesperson of medical supplies to veterinarians for over thirty five years. His affidavit states his professional acquaintance with both board member Gorra and LaCroix and his knowledge that they both attended Cornell University and that LaCroix has worked for Gorra for "about a year or so", about 10 to 15 years ago. (Affidavit, Exhibit B, Reply Brief 4/9/98).
It is the plaintiff's burden to establish bias on the part of Gorra. There is a presumption that board members acting in this adjudicative capacity are not biased.
 To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable. Rado v. Board of Education supra, quoting Withrow v. Larkin. 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).
 The test for disqualification has been succinctly stated as being whether a disinterested observer may conclude that [the board] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.
(Citations omitted; internal quotation marks omitted.)Clisham v. Board of Police Commissioners, 223 Conn. 354, 362
(1992); Transportation General. Inc. v. Dept. of Insurance236 Conn. 75 (1996). Here, the plaintiff has failed to meet that burden. There was no evidence before the court, either in the record below or the court proceedings to establish actual bias or "so egregions an appearance of bias as to taint the fundamental fairness" of the board proceedings. Transportation General. Inc.v. Dept. of Insurance, supra, 236 Conn. 77.
For the reasons set forth above, the appeal is dismissed.
DiPentima, J.